CASE 16—PETITION EQUITY—OCTOBER 3.

# Hill, &c., v. Harding.

APPEAL FROM HENDERSON CIRCUIT COURT.

1. A WILL EXECUTED BY TWO PERSONS JOINTLY IS VALID, being revocable by either to the extent of his interest in the property devised.
2. LIFE ESTATE.—Under specific devises of lands by two brothers jointly to each of several nephews for life, and then to his children, with the provision as to each of the nephews, that if he should die leaving no child the land devised to him should go to the survivors for life, and then to their children, each of the nephews took but a life estate, not only in the land devised to him, but also in the land that he might take as survivor, remainder to his children.
3. SAME.—As the testators, after thus devising their lands to their nephews for life, provided by their will that the residue of their estate should be equally divided between their nephews "on the same conditions, by the same rule and in the same manner as are detailed in the foregoing bequests," the nephews took only a life estate in the residuum, which consisted principally of Government bonds.
4. UNDER A SPECIFIC DEVISE OF PROPERTY FOR LIFE THE TENANT IS ENTITLED TO THE POSSESSION WITHOUT SECURING THE REMAINDER-MAN unless the latter shall show a purpose upon the part of the life tenant to waste or destroy the estate; and as it is the duty of the executor to deliver the property to the life tenant he is not responsible to the remainderman for any loss that may occur. And the same rule applies to a general devise, where it is manifest from the entire will that it was the testators' intention that the life tenant should have the possession.

Hill, &c., v. Harding.

While the devise of the residuum in this case was a general and not a specific devise, yet, as it is manifest from the entire will that it was the intention of the testators that the life tenants should have possession of the property thus devised to them, it was the duty of the executor to deliver it to them, and he is, therefore, not responsible to the remainderman for the loss of the property.

E. G. SEBREE, Jr., MONTGOMERY MERRITT for appellants.

1. Two or more persons may execute a joint will which will operate the same as if executed separately by each, and will be entitled to probate upon the death of either, but will require a separate probate upon the death of the other. (Redfield on Wills, vol. 1, top page 182; Betts v. Harper, 39 Ohio, 639, 48 Am. Rep. 477.)
2. An order of the County Court probating a will is valid as to all the world so long as it remains in force. (Reed v. Reed, 12 Ky. Law Rep.)
3. The conversion in whole or in part of money or property or the proceeds. of property devised to one of the testator's heirs into other property or thing with or without the assent of the testator, is not an ademption of the legacy or devise unless the testator so intended. (Gen. Stats., chap. 50, art. 3, sec. 1.)

   The burden is on the defendant to show such intention. (4 Met., 180.)
4. G. F. Tate took only a life estate under the residuary clause.
5. The devise under the residuary clause is general and not specific. (Lilly v. Curry's Ex'r, 6 Bush, 592.)

   A limitation of personal goods and chattels or money in remainder, after a bequest for life, is good. (Westcott v. Cody, 5 John. Ch'y., 344.)

   Where there is a general bequest for life with remainder over the whole must be sold and converted into money by the executor, the proceeds invested and the interest only paid to the legatee for life. (American notes to Howe v. Earl of Dartmouth, Leading Cases in Equity, vol. 4, part 1, 4th ed., p. 697; Howard v. Howard, 1 C. E. Green, 487; Wooten v. Burch, 2 Md. Ch., 190; Golden county v. Littlejohn 30 Wis. 351; Healey v. Toppan, 86 Am. Dec., 162; Saunders v. Haughten, 57 Am. Dec., 582; 25 Am.'Dec., 726; 21 Am. Dec., 80; 35 Am. Dec., 681; 2 Kent, top page 453.)

C. S. WALKER, YEAMAN & LOCKETT, SWEENEY, ELLIS & SWEENEY for appellees.

1. As Gabriel Tate was living at the death of the surviving testator, the sixth clause of the will gave him the fee-simple and absolute title to one-third of the partnership property therein mentioned. His children were to have no right to this property except in case he was dead, and then the same right only that he would have had if living. (Wills v. Wills, 85 Ky., 489.)
2. There is no sufficient indication of an intention to give an estate for

life only. (Deboe v. Lowen, 8 B. Mon., 64; Daniel v. Thompson, 14 B. M., 537.)

If the sixth clause is construed as passing a defeasible fee, then Gabriel Tate was invested with the fee-simple title as he had children living at his death, and such children take no interest under that clause, but inherit from their father. (85 Ky., 492; Bryant v. Bryant's Ex'r, 6 Ky. Law Rep., 293; Ecton v. Smith, *Idem*, 216; Cleveland v. Cleveland, 5 Ky. Law Rep., 56; Hayden v. Wilson, 4 Ky. Law Rep., 827.)

3. If a life estate was created by the sixth clause a trust was created, and the life tenant was entitled to the legacy as trustee for the remaindermen, with the right to use the income.

The legacy is specific. (Alexander v. Waller, 6 Bush, 343.)

The life tenant is entitled to the possession without security, unless there is danger that the articles may be wasted or otherwise lost to the remaindermen. (Covenhoven v. Shuler, 2 Paige Ch'y, 344; De Peyster v. Clendenning, 8 Paige Ch'y. 439; Walde v. Cummings, 45 Ill., 421; 57 Am. Rep., 48; 13 Am. and Eng. Encyclopedia of Law, 201.)

In no event can the executor or trustee exact such security, but must deliver the specified articles to the tenant for life, as directed by the will, and the remaindermen, in case there is danger of the articles being wasted or lost, may require such security and enforce it in Chancery. (Whittemore v. Russell, 80 Me., 297; 6 Am. St. Rep., 202.)

4. A joint will, like the one in the present case, is invalid. (Lewis v. Scofield, 26 Conn., 452; 68 Am. Dec., 404; Schumaker v. Schmidt, 44 Ala., 454; 4 Am. Rep., 135; Walker v. Walker, 14 Ohio St., 157; 82 Am. Dec., 481; Hershy v. Clark, 35 Ark., 17; 37 Am. Rep., 1.)

WEIR, WEIR & WALKER, OF COUNSEL ON SAME SIDE.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Andrew Tate and Hugh Tate, two bachelor brothers, and both living to an advanced age, executed a joint will that was admitted to probate in the county of Henderson, where they resided at the time of their death. They owned, jointly, a large landed and personal estate valued at many thousand dollars. Hugh Tate died in the year 1872, and the joint will was probated during that year as his last will; and Andrew Tate died in the year 1875, and, shortly after, the joint instrument was also probated

as his last will.   They had a nephew, Gabriel Tate, and two nieces, Mary Harding and Nancy Herr, to whom and their children they devised their large estate.   After the death of Andrew Tate, the appellee, J. H. Harding, was appointed and qualified as administrator, with the will annexed of both testators, and undertook the execution of the will, giving bond with his co-appellee, James M. Herr, as one of the sureties.

Birdie Hill and her husband—Mrs. Hill being the daughter of the devisee, Gabriel Tate—instituted this action in the court below, on the administrator's bond of the appellee (Harding), alleging in the petition that Government bonds, deposits in bank, notes, etc., ot the value of eighty-six thousand dollars, belonging to the testators, had been paid over to her father and the two other devisees, and that the amount paid over to her father had been wasted by him and forever lost to her, basing her claim on the ground that her father had only a life interest in this personalty, with remainder to his children, and this is one of the principal questions to be settled on this appeal.

It is first insisted by counsel for the administrator that a joint will, such as was probated in this case, is a nullity, for the reason that it destroys the power of revocation on the part of both the parties to it, and, therefore, contravenes the policy of the law.

Authorities of some weight are cited in support of this position, and to make an irrevocable will would be the creation of an instrument unknown to the law.

Redfield on Wills (volume 1, page 182) says that two or more persons may make a joint will that will be entitled to probate on the death of either, but will require a

separate probate.    The Indiana Supreme Court held in
Black v. Richards, 95 Ind., 184, a joint will to be valid,
and a like question was determined in Betts v. Harper,
39 Ohio St., 639.

If Andrew Tate, one of the testators, who survived his
brother, had revoked the will in so far as he was inter-
ested in the property devised, his right to do so would
have been sustained.    It was his estate, and he had the
right to dispose of it as he pleased, and if his own circum-
stances in life changed, or if the objects of his affections
had forfeited their claims to his bounty for reasons to
himself deemed sufficient, we perceive no reason why he
could not have altered the will in so far as it affected his
interest in the property.    There was no effort on the part
of either of the brothers to revoke the instrument, and
both died leaving the paper as their last will and testa-
ment, and, being valid, the next of kin, who are also the
devisees, took under the will and not as heirs at law.

The ground of recovery insisted upon by the appellee,
Mrs. Hill, who was a daughter of the devisee, Gabriel
Tate, is, that by the provisions of the will the entire res-
iduum of the estate, after making a specific devise of cer-
tain lands to each one of the devisees, was devised to
their nephew, Gabriel, and their two nieces, Mary Hard-
ing and Nancy Herr, for life, with remainder to their chil-
dren, and that this residuum, consisting of Government
bonds, deposits in bank, etc., was all paid over to the life
tenants, when it was the duty of the appellee, the admin-
istrator, to have paid them the interest only, holding the
principal sum for those in remainder.    The defense main-
tain that the residuum was devised to the nephew and
nieces without any other consideration than that of their

surviving the testators; that if they survived the two testators it was their absolute property, and if dead, that it then passed to the children of the one dying, if any, if not, then to the surviving devisees or their children.

It is also insisted that if the estate in the first taker was a life estate, the devise being specific in its character, it was the duty of the personal representative to pay over to the owners of the life interest the principal as well as the income of this devise, and for that reason no responsibility exists.

The testators devised to Gabriel Tate certain lands, describing them, " for and during his life, and then to his children, and in case he shall leave no child alive at his death, the said lands shall be divided equally between Mary Harding and Nancy Herr, if both shall survive, for their use and benefit during their lifetime, and then to their children. If Mary shall survive Gabriel, he leaving no child, then the lands bequeathed to him shall be equally divided between her for her use and benefit during life, and then to her children, and to the children of Nancy, or if Nancy shall leave no child the lands shall pass to the *possession* of Mary during her life, and then to her children, or if only Nancy shall survive Gabriel, he leaving no child, the lands bequeathed to him shall be equally divided between her, for her use during life, and then to her children and the children of Mary, or if Mary shall leave no child, the said lands shall pass to *the possession* of Nancy during her life, and then to her children." If neither Mary nor Nancy shall survive Gabriel, he leaving no child, the lands bequeathed to him shall be equally divided between the child or children of Mary, and the child or children of Nancy, or if either shall

leave no child, the lands shall pass *to the possession* of the child or children of the other."

To Mary Harding and Nancy Herr he devises certain lands and makes the identical provision with regard to their interests that is made in the devise to Gabriel, vesting the surviving devisees and life tenants with an estate for life and then to their children. In other words, the nephew and two nieces are made life tenants in the devises made to each, and also life tenants in what they may take as survivors if one of the life tenants should die without children. The devisors not only attempted, but did, in apt words, make the nephew and nieces life tenants in the real estate devised, remainder to their children, and in such a manner as can leave no doubt as to their intention.

It is the sixth clause of the will from which this litigation originates. It is as follows: "If at the death of whichever one of us shall survive the other, there shall remain any property held in partnership during life, not herein or hereafter disposed of by us or either of us, the same shall be, after our burial expenses are paid, equally divided between our said nephew, Gabriel Tate, and our said niece, Mary Harding, and our said niece, Nancy Herr, or their children, *on the same conditions, by the same rule and in the same manner as are detailed in the foregoing bequests.*" The foregoing bequests were the devises made of the lands by the testators to their nephew and two nieces, for none other had been made by the will except a provision for the support of an aged relative. The appellees say that the devise in this sixth clause of the will, under which this large amount of Government bonds and stocks pass, places no limitation on the title by

which it is to be held; that it was a devise directly to the nephew and nieces, or if they or either of them did not survive the last testator, then to their children. The verbiage is—" shall be equally divided between Gabriel Tate, Mary Harding and Nancy Herr or their children"— and, if this was the entire clause of the will, it would be plain that the nephew and nieces, if they survived the testators, would take the absolute interest in this personalty, but in the same connection, and following the word children, " *on the same conditions, by the same rule and in the same manner as are detailed in the foregoing bequests.*" The draftsman, it is true, knew how to create a life estate, for he had done so in plain terms with reference to the land, and in the general residuary devise it is provided that you or your children shall have what you get under that devise, "*on the same conditions, by the same rule and in the same manner as are detailed in the foregoing bequests.*" The devisor, to use the language of the will, had, in detail, stated the mode in which his realty should pass, and the same shall apply to the residuary devise, to be held on the same conditions, by the same rule *and in the same manner* as you hold the estate already devised to you. We are satisfied that such was the intention of the testators, and to determine otherwise, we must necessarily disregard the plain language used in expressing their wishes.

Counsel for the appellees say, that if the sixth clause of the will creates a life estate only, the life tenant, or rather the one having an interest in this personalty for life, was entitled to the use and the possession of the property devised that he might control and dispose of the income as he pleased, holding the principal as trustee

for those in remainder. If a specific devise of bank stock or certain Government bonds, or all the Government bonds owned by the testators, or a devise of such a chattel as must necessarily be consumed in its use, or even a devise of a fixed sum of money; then it is plain the life interest or the one taking it would be entitled to the possession without giving bond or securing the remainderman, unless the latter should show a purpose to waste or destroy it. With this the personal representative has nothing to do, but the proceeding for the safety of the fund is with the remaindermen or some one representing them. It is the duty of the executor to pay it over. (2 Perry on Trusts, section 547 ; Covenhoven v. Schuler, 2 Paige, 122, 2 N. Y., Ch'y Rep. 844 ; Whittemore v. Russell, 80 Maine, 297.) If a specific legacy, the first takers are entitled to the possession. Is it a specific legacy ? Here is all the property not disposed of devised to one person for life, remainder to his children. It is a general devise, and nothing that distinguishes it from any other character of estate or that would make it specific in its character. Williams on Executors says, page 944, " a specific legacy is defined to be the bequest of a particular thing, specified and distinguished from all others of the same kind." (Lilly v. Curry's Ex'r, 6 Bush, 592.)

In Golder county v. Littlejohn, 30 Wis., 351, the court said : " The general rule is, that where there is a bequest of the whole of the testators' personal estate or of the residue thereof, after the payment of debts and expenses of administration and legacies, to one person for life, with remainder to others after the termination of the life estate, the whole property must be converted into money and invested in permanent securities by the executor,

Hill, &c., v. Harding.

and the income only paid to the legatee for life, but if it can be gathered from the will that the testator intended that such legatees for life should enjoy the property in its then condition, the bequest is specific, and the legatee is entitled to the possession and enjoyment of the property, although the bequest be made in general terms." While, as stated in the case cited, the intention of the testator must control, it does not, in our opinion, change the character of the devise from a general to a specific devise. It is still a general devise, and the tenant for life is only entitled to the possession because such was the wish of the testator, and this was evidently the meaning of the learned judge who delivered the opinion.   There is nothing in the will of these testators making the devise specific in the sixth clause, but there is a manifest intent plainly expressed, when considering the entire will, that the nephew and nieces should hold and have possession of the residuum of the estate.   Much of the amount in controversy had been invested by the testators in Government bonds, an investment that was deemed secure, and as much so as any investment that could have been made by the personal representative, and while for his own protection, to prevent future litigation with the remaindermen, he should have consulted the Chancellor in a proceeding where the parties could be heard, having undertaken the trust he found much of the personalty in the nature of secure investments, and a devise to the nephew and nieces of this residuum or to their children, *upon the same conditions and to be held in the same manner as the real estate.*   The Government bonds and cash in bank constituted the greater part of this personalty, and amounted to a sum exceeding eighty-six thousand dollars,

that belonged to the three devisees for life, remainder to their children. No trustee was appointed by the will or any direction made as to the mode of its use.

The testators by the sixth clause expressly provide, that at the death of whichever one of them shall survive the other, all the property not disposed of by the will (and all the real estate had been) *shall be,* after our burial expenses are paid, equally divided between our said nephew, Gabriel, and our nieces, Mary Harding and Nancy Herr, when divided—at the death of the surviving testator and between the three life tenants—not to be placed in the hands of a trustee, nor retained by the administrator that he may invest and hold for the remaindermen, but to be divided between their nephew and nieces, and if one of the life tenants should be dead at the death of the last testator, then to be divided between his or her children, to be held in the same manner as the real estate, the manner of the holding applying to the life tenant as well as the children.

Again we find the expression in the will as to the realty repeated more than once, that if one should die without children, his or her interest shall *"pass to the possession* of the other." He not only intended that the devisees for life should have the income, but the possession of both the real and personal estate. As to the real estate there can be no doubt, and when it is adjudged that the manner of the holding is the actual possession of the one species of property, the same manner of holding must be applied to the other, because the testators say so. The language " on the same conditions, by the same rule *and in the same manner as are detailed* in the foregoing bequests," not only determines the question of title, but

also all that makes up the evidences of title, and among the evidences of title is that of possession.   This was the intention of the devisors.   They desired the life tenants to use and enjoy the possession of the whole estate, and in giving effect to the language used in the sixth clause of the will, by which the property is to be held in the *same manner* as that already devised, the Chancellor would scarcely confine himself in interpreting its meaning to the question of the mere naked title, in order to hold the personal representative liable for the waste of the life tenant, but will go further and say, that under the language of the will, the use and possession under the sixth clause is similar to that under the devises of the real estate, and such was the intention of the testators we have no doubt.

The judgment dismissing the petition is, therefore, affirmed.

To a petition for rehearing, filed by counsel for appellants, Judge Pryor delivered the response of the court:

We concur with counsel, that the universal construction given to wills when a general devise of bonds or money is made to one for life, with remainder over, that it is the duty of the executor to retain the possession and pay to the life tenant the income, unless, from the whole will, it appears that it was the intention of the testator that the life tenant should have possession of the thing devised and if, in this case, there appeared nothing else than *a devise of the bonds* and money to the nephew and nieces for life, to be equally divided between them, remainder to their children, the administrator would be held responsible if he gave to the life tenant the *corpus* of the

estate, and permitted him to waste it.    The. testators
were doubtless as solicitous for the welfare of the life
tenants as their offspring, the remaindermen, and it is.
manifest from the entire will they intended the life ten-
ants to use, enjoy and possess the whole estate.

The testators left no trustee to hold this fund nor any
direction to the executor as to the manner of its use and.
possession, but after the death of the surviving testator
it was expressly provided by the will that this personal
estate, consisting of bonds, cash, etc., *should be equally
divided between our said* nephew, Gabriel Tate, and our
said niece, Mary Harding, and our said niece, Nancy
Herr, *or their children, on the same conditions, by the same.
rule and in the same manner as are detailed in the forego-
ing bequests.*    The bequests alluded to were the several
devises made of the land, and if Mrs. Harding, the niece,
had died before the last testator, the executor of the will
would have been required to deliver over to her children,.
if she had any, the use and possession of their part of the
residuary devise, for it would pass to them absolutely.

Now the testators never intended that if one of the life
tenants died before they did, that the personal represent-
ative, at the death of the last testator, in dividing this
real and personal estate, should give the use and posses-
sion of the devise to the children of the deceased life ten-
ant, and withhold the possession of that part of the per-
sonalty going to the life tenants then living, that he might
loan it out and pay them the income only.    They were
all (that is the life tenants) to have the use and possession,
after the death of the testators, of the entire estate
devised, and if one died before the testators, then the chil-
dren took in the place of the life tenant dead.    The divis-

ion was to be made in that way—at the death of the surviving testator—and the idea of the executor holding this estate of personalty until children then unborn might become entitled, never entered the mind of either testator.

Petition overruled.