### FARMER v. ZINN et al.　(No. 10531.) *

(Court of Civil Appeals of Texas. Fort Worth. March 15, 1924. Rehearing Denied May 3, 1924.)

**1. Wills ⬉782(12)—Will held to require election by widow.**

A will by which testator assumed to dispose of the community property, both real and personal, expressly denying any right of final disposition of any part until expiration of widow's life estate, required an election by widow whether she would take under will, notwithstanding use of word "my" by testator in disposing of community property.

**2. Wills ⬉794—Facts held to show election by widow to take under will.**

Where a widow, whose husband's will undertook to dispose of the entire community estate, received the benefits of a life estate in her husband's community interest in lands specified in will, and duly qualified and filed an inventory thereunder, *held*, that she thereby elected to take under will.

**3. Wills ⬉796—Election could not be recalled.**

Where widow elected to take under her husband's will disposing of community property and giving her a life estate therein by receiving benefits for some 10 years or more, such election was not affected by her manifesting a purpose shortly prior to her death to assert rights inconsistent with the terms of the will by executing will and deed to an undivided interest in part of the lands.

Appeal from District Court, Young County; H. R. Wilson, Judge.

Action by Lou Lee Zinn and others against W. W. Farmer and others. Judgment for plaintiff, and the named defendant appeals. Affirmed.

Fred T. Arnold, of Graham, and Capps, Cantey, Hanger & Short and E. A. McCord, all of Fort Worth, for appellant.

Johnson & Johnson, of Fort Worth, for appellees.

CONNER, C. J. Lou Lee Zinn and others instituted suit against W. W. Farmer and others in trespass to try title, and for partition of a tract of land consisting of about 800 acres near the town of Farmer, Young county. All parties, plaintiffs and defendants, are devisees and heirs of devisees un-

der the will of W. H. Farmer, who died in 1906. The land in controversy was the community property of W. H. Farmer and his wife, M. A. Farmer. The will of W. H. Farmer, as will hereinafter be more particularly shown, devised to his wife, Margaret A. Farmer, certain specified property for life, including the land in controversy, with absolute power of disposition as to all property excepting said land, which by the terms of the will, was to go to children therein specified, including his son, W. W. Farmer. M. A. Farmer was made executrix, and she in due time and manner caused the will to be probated, filed an inventory, and took possession of the property devised to her.

After the death of her husband, M. A. Farmer lived with her son, W. W. Farmer, and died in 1917, leaving a will with devises inconsistent with the devises made by her husband, W. H. Farmer. Prior to her death, in May, 1917, she also executed a deed conveying to W. W. Farmer an undivided one-half interest out of a specified one-half of 700 acres of the land in controversy.

As originally tried, the plaintiffs sought recovery and partition in harmony with the will of W. H. Farmer, and also sought to set aside the deed made by M. A. Farmer to W. W. Farmer, and also sought to recover certain alleged indebtedness of W. W. Farmer, and for the recovery of rents and profits upon the land in question.

A trial was had upon the issues thus originally stated, and from the judgment rendered an appeal was prosecuted to this court as will appear from our opinion in Zinn v. Farmer, 243 S. W. 523, in which will be found a copy of the will of W. H. Farmer and a more complete statement of the case, and to which we refer for that purpose. The judgment from which that appeal was prosecuted was reversed for an error relating to the effort of the plaintiffs to recover upon the alleged indebtedness of W. W. Farmer, the reversal being accompanied with the suggestion that there was evidence tending to show that the will of W. H. Farmer purported to convey the whole of the community property as if it was the separate property of the testator, and that Mrs. M. A. Farmer, as executrix, had accepted under the terms of this will, and hence was perhaps without power to make the deed to W. W. Farmer, which the plaintiff sought to set aside. The issue so suggested was made prominent upon the last trial, which was before the court without a jury, and resulted in a finding that M. A. Farmer had elected to accept under the will of her husband, W. H. Farmer, and hence was precluded from deeding or devising any part of the property in controversy, and that her one-half of the community interest therein would pass to the devisees under the will of her husband. Judgment was therefore entered canceling the deed and will of M. A. Farmer and dividing the land between the seven devisees of W. H. Farmer, including W. W. Farmer, who excepted to the judgment and has duly appealed to this court.

The controlling questions presented on this appeal are whether the will of W. H. Farmer was such as to require an election on the part of his wife to accept the terms thereof, or to claim her right in the property in question as a community co-owner, and, if so, whether she made such an election. As stated, the entire will of W. H. Farmer is set out in our former opinion, but we will here quote only such portions as are deemed pertinent to the questions now before us. It is undisputed that the land in question was the community property of W. H. and M. A. Farmer. A part of the will of W. H. Farmer, in so far as necessary to set out, reads:

"First. I will and bequeath unto my beloved wife, Margaret A. Farmer, my farm, pasture, orchard and residence; about 700 acres of survey No. 2, block A and 160 acres J. C. Smith pre-emption, near Farmer, Young county, Texas, and all of my household and kitchen furniture, ten cows and calves, and all the tools, crops and rents, all provisions on hand, half of wagon and buggy, and two choice horses, all of which she has absolute right to during her lifetime; at her death to go to my children as I will name, to wit: * * *

"Second. I will that at the death of my beloved wife Margarette A. Farmer, that the seven hundred acres of land and other lands that I may be in possession of, money, property and effects, shall be divided equally between * * *."

"Fourth. I will that my wife have power in law to sell all my property, real and personal and to make and deliver deed to same; except the 700 acres above named and that shall not be sold until her death.

"Fifth. I will and appoint my beloved wife my executrix, giving her power over my estate, and that there be no administrator except to probate this will; and that my administratrix be not required to give bond.

"Sixth. I will that my wife have power to lay off other lands in town lots, and that she may sell lots thus laid off, or that are now laid off, and make deeds to same."

[1, 2] Appellant vigorously insists, first, that the will of W. H. Farmer is not such as required an election on the part of M. A. Farmer; and, second, that, if so, the evidence failed to show that she in fact made such election, and that therefore her undivided community interest in the property involved passed as by her directed in her deed and will, and, if correct in these contentions, the judgment, under the undisputed evidence and the court's findings should undoubtedly be reversed and here rendered in accordance with the contention of appellant. As said by Chief Justice Phillips, of our Supreme Court, in Avery v. Johnson, 108 Tex. 294, 192 S. W. 542:

"The law presumes that no man will attempt a testamentary disposition of the property of

others. It deprives no man of his property merely by conjecture. Therefore, for a will to be given the effect of an attempted disposition of property not owned by the testator, it is required that the language of the will conclusively evidence such a purpose. In such cases it is not sufficient that the will may be construed as revealing such an intention. It is necessary that it be open to no other construction"—citing cases.

Appellant relies upon a number of cases, the first of which, and perhaps the most closely in point, is that of Dunn v. Vinyard (Tex. Civ. App.) 234 S. W. 99. In that case the will of the husband, E. E. Dunn, bequeathed to his wife, Mrs. Mary E. Dunn:

"All and entire my estate and property, real, personal and mixed of which I shall die seized and possessed, and to which I may be in any way entitled at the time of my death, except * * *. To have and to hold said estate and property unto her the said Mary E. Dunn for and during the full term of her natural life, she to have and receive, use and enjoy the rents, revenues, profits, interest and income of said property for and during the term of her natural life."

In a subsequent clause of the will it was recited that the testator was "disposing of said estate and property as a whole, and as if the whole title and right to the same was in me," etc. Mary E. Dunn qualified as executrix of the will, filed an inventory, and took possession of the estate, and thereafter continued to use and occupy the homestead and appropriate a part of the revenues to her own support and that of a daughter until she died. The Court of Appeals held that the evidence did not warrant the finding that Mrs. Dunn elected to take under the will of her husband, and thus deprive herself of the right of disposition in her community interest. A writ of error, however, was granted in that case, and it was held by Section A of the Commission of Appeals, in an opinion by Mr. Justice German, approved by the Supreme Court (251 S. W. 1043), that the will in that case not only required an election, but that the evidence was such as to show that the wife in fact had elected.

Appellant insists that because of the frequent use of the expression in the will here under consideration of the personal "my" in connection with the farm, orchard, pasture, etc., specified in the will as "my farm, orchard, pasture, and residence, * * * my household and kitchen furniture, cows and calves," etc., it is manifest that it was not the purpose of W. H. Farmer to attempt to devise any part of the estate of his wife, M. A. Farmer. But, reading the will as a whole, we can but think the trial court correctly held that it was in terms and nature such as to require an election on the part of Mrs. Farmer. She could but know that the "700 acres in survey No. 2, block A and the 160 acres J. C. Smith pre-emption, near Farmer,"

was community property to which, under the law, she was entitled to only one-half, and the will very plainly conferred upon her a life estate in the community estate owned by her husband, the testator. The will assumed to direct the disposition of the whole, expressly denying any right of final disposition of any part thereof until the expiration of the life estate. While neither the will nor the evidence shows whether the household and kitchen furniture, the cows and calves, tools, crops, rents, and provisions on hand and horses was of the community or separate estate of W. H. Farmer, as none of this property was set forth in the inventory, it is not a violent presumption that the personal property so listed was community property, as the evidence shows that the parties had been married many years before; and, if it be so assumed, it but adds to the force of the contention of appellees that she (Mrs. Farmer) received a benefit under the will.

While the inventory filed by Mrs. Farmer listed no personal property, the evidence failed to show that in fact there was none, and the recitations in the will of its existence plainly implied and the undertaking to dispose of it affords a presumption that the personal property specified existed, and nothing in the evidence tends to show that Mrs. Farmer did not avail herself of the right thereto given her under the will. But, whether she did or not, the evidence clearly supports the trial court's conclusion that she received the benefits of the life estate in her husband's community interest in the lands specified in the will.

Appellant W. W. Farmer himself testified, among other things:

"I use all that land myself now. I do not have any of it rented out. I have not rented any of it since my mother died. Before my mother died, during her lifetime, and after my father died, she was the possessor of that land, and yet I lived on the land and used it. My mother lived with me, and all the land I considered was hers during her lifetime. I did not support her altogether off that land. I had other property. My mother and I had the benefit of that 804 acres of land during her lifetime after my father died. Nobody ever molested us or told my mother to get off. She and I lived on the land together. I did not keep any account of what her expenses were. I wasn't out anything for my mother's medicine or doctor bills, or anything like that. The only thing was the table, what she ate."

It was said by our Supreme Court in the case of Smith v. Butler, 85 Tex. 126, 19 S. W. 1083, that:

"'The principal of election is, that he who accepts a benefit under a will must adopt the whole contents of the instrument, so far as it concerns him, conforming to its provisions and renouncing every right inconsistent with it.' Philleo v. Holliday, 24 Tex. 45. 'Some free disposable property must be given to the elect-

ing donee which can become compensation for what the testator sought to take away.' Bige. on Estop., 645. The compensating thing, however, need not be equivalent in value of that taken from the person put upon his election."

The case of Smith v. Butler is cited with approval in the case of Dunn v. Vinyard by the Commission of Appeals, above cited. It is there said:

"The doctrine of election under a will is too familiar to require a general discussion. Briefly it may be said that where one has a valid claim to property which is disposed of by will (as in the case of the surviving wife in community property), in violation of such right, and at the same time other property to which the claimant would not be entitled is devised to the claimant, an election becomes necessary. In other words, an election means that a legatee or devisee under a will is put to the choice of accepting the beneficial interest offered by the donor in lieu of some estate which he is entitled to, but which is being taken from him by the terms of the will. When by the express terms of the will the party is put to an election, he must make a choice regardless of the relative value of the two inconsistent rights. To uphold an election the compensating thing need not be of value equal to that taken away."

In the same case it was further said:

"The question of election under a will is one of fact for the jury. Mayo v. Tudor's Heirs, 74 Tex. 474, 12 S. W. 117. An election may be express or implied. When not expressly made, it is a question of intention and must be decided from all the facts and circumstances of the particular case. A valuable discussion of all the general principles, with authorities showing their application, will be found in the note to Owens v. Andrews, 49 L. R. A. (N. S.) 1072–1108."

It is undisputed, as before stated, that Mrs. M. A. Farmer duly qualified and filed an inventory under her husband's will, and on the reversal of the judgment on the former appeal by this court it was intimated that this was a circumstance which might be considered with others in determining whether or not an election had been made, and this view is certainly indicated in the opinion of the Commission of Appeals.

Appellant, however, insists that Mrs. M. A. Farmer received no benefit under her husband's will because of the fact that W. H. Farmer and M. A. Farmer during the lifetime of each had executed what is termed a lease to W. W. Farmer and wife of the lands in controversy in consideration that the latter should live with and take care of them during their natural lives, and have all profits accruing therefrom during said time. We find in the statement of facts what purports to be an agreement of that character and effect, but it is not dated, nor did any witness testify that the signatures thereto wer the genuine signatures of W. H. and M. A. Farmer, nor was it acknowl-

edged by either of them or by the only person who purports to have signed it as a witness, J. W. Hargus, nor was J. W. Hargus offered as a witness on the trial; and the evidence wholly fails to show that W. W. Farmer or his wife ever complied with the agreement by supporting W. H. Farmer, the father, during his lifetime. In the brief in behalf of appellees, it was asserted that this instrument was excepted to because of the want of proof of its execution, reference being made to Q. and A. statement of facts. The Q. and A. statement of facts, however, is not before us, nor do we find in the record any formal bill of exception to the instrument. But, whether objected to or not, we do not think the instrument in its legal effect is sufficient to overturn the trial court's finding that M. A. Farmer received benefits under the will of her husband, for the evidence not only shows a want of proof in the execution of this instrument and a failure to act thereunder in the care and support of W. H. Farmer, but further fails to show that W. W. Farmer asserted a right to the profits arising from the land in controversy during the lifetime of his mother. In one place he testified, "Since my mother's death I have been living in the house and had charge of the pasture," thus indicating that he did not have charge of the pasture (part of the land in controversy) prior to his mother's death. Moreover, as it seems to us, the will purports to confer a benefit upon M. A. Farmer aside from the lands in controversy, in that the personal property therein mentioned, whether community or separate, of W. H. Farmer, was devised to her, and neither W. W. Farmer nor any other witness while testifying denied the existence of such personal property, or denied that M. A. Farmer availed herself of its benefits, and this could easily have been shown, as it seems to us, had the contrary been true.

[3] Nor do we think controlling effect can be given to the fact that in May, 1917, prior to the death of M. A. Farmer, but during the same year, she executed her will and a deed to W. W. Farmer to an undivided interest in a part of the land in controversy. It is true these instruments at the dates of their execution indicate that she then desired a different disposition from that provided in the will of her husband. In the case of Smith v. Butler, hereinbefore cited, it appeared that Mrs. Butler applied to have the homestead and exempt property received under the will of her husband set apart to her, and this was done, but the exempt personal property did not embrace all that she received under the will. The court there said:

"There was no act by Mrs. Butler showing clearly an intention not to be governed by the will, unless it was an attempt to bestow upon her daughter all the personal property on hand

at the time of her death; but, even as to this, the evidence does not make it clear that she had not given that property to her daughter some time before her death. If, however, such an attempt was made, this could not change the rights of the parties after facts had transpired that would constitute an election."

So in this case we think the manifested purpose of M. A. Farmer shortly prior to her death to assert rights inconsistent with the terms of the will of her husband comes too late after she had acted under and received benefits by reason of that will for some 10 years or more, thereby preventing a distribution of the community interest of W. H. Farmer among his children according to the laws of descent and distribution, had no such will been executed.

On the whole, we conclude that the evidence is sufficient to support the trial court's conclusions on all material issues, and the judgment will be affirmed.