**COMMISSIONER OF INTERNAL REVENUE v. MASTERSON.**

**MASTERSON v. COMMISSIONER OF INTERNAL REVENUE,**

No. 9903.

Circuit Court of Appeals, Fifth Circuit.

April 4, 1942.

Rehearing Denied May 29, 1942.

See 128 F.2d 526.

L. W. Post, Sewall Key, and J. Louis Monarch, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Ralph F. Staubly, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner, Com'r of Internal Revenue.

Harry C. Weeks and Benj. L. Bird, both of Fort Worth, Tex., and Chas. H. Keffer, of Amarillo, Tex., for Anna Eliza Masterson.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

The Board of Tax Appeals determined a deficiency in gift tax against Anna Eliza Masterson for the year 1935. By cross-petitions for review both the Commissioner and the taxpayer contest the Board's determination. The decision of the Board is reported, Masterson v. Commissioner, 42 B.T.A. 419.

In stating the facts we substantially follow the findings of the Board: The taxpayer, Anna Eliza Masterson, was born February 5, 1868. She is a resident of Amarillo, Texas, and is the widow of R. B. Masterson, who died August 1, 1931. In addition to his wife, Masterson was survived by two children by a prior marriage and four children by his marriage to the taxpayer. At the time of Masterson's death, he and his wife, Anna Eliza Masterson, owned a substantial estate, all of which was community property.

On December 6, 1928, Anna Eliza Masterson and her husband, R. B. Masterson, executed a joint will and covenant wherein they expressed the desire to dispose of all their estate in the manner set forth therein, such disposition to take effect at the time of the death of either of them, with further provision for final distribution of the estate upon the death of the survivor. It was mutually agreed that all of the property belonging to either of them was community property, and that in the distribution of such property all six of the children mentioned above would be treated and considered as of the full blood, share and share alike. Other provisions of the joint will and covenant important to decision follow:

"3. In consideration of said mutual agreements, and in consideration of the further mutual agreement that the survivor of us shall in all things be and remain bound by the provisions hereof, and upon our mutual solemn covenant and agreement with each other that neither of us shall hereafter execute any will, other than as mutually agreed, dealing with our said estate, we have entered into this mutual covenant and the execution of this joint will, expressly agreeing and covenanting with each other that the same shall not hereafter, unless by our mutual written consent, be in any manner changed, modified or revoked, and that all the terms, provisions and conditions hereof shall be from and after the execution hereof binding upon us and the survivor of us as the agreed means and method of making effective our desires and directions as to the disposition of our said community estate. And for such purposes, we each waive our respective community rights and interest in said estate, and here agree that the same shall remain intact, subject to the terms, conditions and provisions hereof.

"II. It is our will and desire that the survivor of us, R. B. Masterson or Anna Eliza Masterson, as the case may be, shall, with the rights and authority below given, have all the estate of every description, real, personal, or mixed, which either or both of us may own, to be used, occupied, enjoyed and expended by and during the life of said survivor, with the full management and control thereof, with the right to receive all rents and revenues, invest all moneys of the estate, pay all taxes and assessments, indebtedness and other proper and just claims and charges against said estate and joint property; but with the limitation, however, that neither of us as such survivor shall have the right or power to sell and dispose of any of said estate except for the purpose of (1) paying proper and legal charges and claims against said estate, (2) provide for the maintenance and support of survivor of us, and (3) such sale and distribution * * * may be made * * * for the purpose of distributing said estate share and share alike among the children named in Paragraph 2, Subdivision I, hereof, * * * The survivor, however, shall in any event have the full right, power and authority

to make, execute and deliver oil and gas leases or renew or extend existing oil and gas leases * * *.

"2. The survivor of us shall have the right, power and authority at any time when he or she may deem best to distribute one-half of our joint estate to the children hereinabove named in Paragraph 2, Subdivision I, of this will, share and share alike.

"3. In the event of the marriage of the survivor of us one-half of all our estate shall immediately vest in our children, share and share alike * * *.

"III. Upon the death of the survivor of us, or upon our simultaneous death, we mutually agree and here jointly direct that said joint estate shall be disposed of as follows:

*     *     *     *     *

"2. Thereupon and after payment of said special bequest to our daughter Mary Masterson Fain and the special bequests to Mrs. Bettie McGregor and Mrs. Flora Masterson, we desire and direct that our executors hereinafter named shall as soon as possible consistent with the welfare of said estate divide, transfer, convey and deliver the residue of same, share and share alike, to our children * * * In the event, however, that any of said children should predecease the survivor of us, then in such event the interest in our estate herein devised to such child shall vest in the issue of his or her body, share and share alike * * * Descendants of deceased children, however, shall take under this will per stirpes and not per capita.

*     *     *     *     *

"5. We hereby constitute and appoint the survivor of us as independent executor of this our joint will, without bond, with the rights and powers enumerated under Subdivision II hereof * * *."

R. B. Masterson died on August 1, 1931, and on August 17, 1931, the will was admitted to probate in the County Court of Potter County, Texas. Letters testamentary were issued to Anna Eliza Masterson and she administered the entire estate until August 19, 1935.

On August 19, 1935 Mrs. Masterson executed an instrument purporting to release and relinquish a certain interest in the estate to the six children named in the joint will and covenant. Important excerpts from the instrument provide:

"Whereas, it is the desire of the undersigned, Anna Eliza Masterson, at this time to release and relinquish unto the said R. B. Masterson, Jr., T. B. Masterson, Sallie Lee Scott, Anna Belle Kritser, Fanny Fern Weymouth, and Mary Masterson Fain all of her right, title and interest in and to the limited life estate reserved unto herself in and to the whole community property of herself and deceased husband, R. B. Masterson, with the exceptions hereinafter stated, and desires also to relinquish and release unto said persons any right of control that she might have in and to the accretions to said undivided one-half interest since her husband's death, so that henceforth she will look only to the limited life estate granted her by said will in the portion of the joint estate formerly belonging to R. B. Masterson for her support and maintenance, and she will have no interest in any of said joint estate, or its accumulations, save the right to manage and control under the terms of said will the one-half of said joint estate formerly belonging to R. B. Masterson, and will look to the residue of said one-half for her future support and maintenance:

"Now Therefore, in consideration of One Dollar ($1.00) to me in hand paid, receipt of which is hereby acknowledged, and the further consideration of the natural love and affection that I bear for the grantees herein, I, Anna Eliza Masterson, a feme sole, of Potter County, Texas, do by these presents release and relinquish unto T. B. Masterson, of Knox County, Texas, Sallie Lee Scott, of Travis County, Texas, and R. B. Masterson, Jr., Anna Belle Kritser, a widow, Fanny Fern Weymouth and Mary Masterson Fain, all of Potter County, Texas, all right, title and interest of any and every nature whatsoever which I have or claim (the same being the limited life estate above described) in and to the undivided one-half interest which represents my entire community interest in and to the community estate of myself and deceased husband, R. B. Masterson, except as to the reservation and exception hereinafter set out, including any right of control or other rights, that I might have in and to the increased value of said community interest that has accrued since the death of my husband, R. B. Masterson; so that henceforth said grantees hereinabove named shall have, own and control said entire interest herein relinquished free and clear of the limited life estate heretofore owned and held by me, Anna Eliza Masterson.

"It is specifically understood that this relinquishment shall be construed to cover

my entire community interest in and to the entire community estate of myself and deceased husband, R. B. Masterson, including all property, real, personal and mixed, of any and every nature whatsoever, except as to the reservation and exception hereinafter set out including the increase in value thereof, so that henceforth I shall have no claim of any nature whatsoever in and to said property. It being distinctly specified that this relinquishment relates to my community one-half in the joint estate formerly belonging to R. B. Masterson and myself, and not to the one-half formerly belonging to him."

Taking into account Sections 501 and 506 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, pages 580, 588 relating to gift tax, the question for decision is what property or property interests constituted the subject matter of the taxpayer's gifts to the children by the instrument of August 19, 1935?

In determining the value of the gifts, the Board of Tax Appeals held that the subject matter of the gifts was a full life interest in one-half of the original community estate, plus a fee interest in one-half of the net revenues of the estate from the date of the husband's death to the date of the gifts, "being one-half of the net revenues not shown to have been withdrawn by her." In her petition for review the taxpayer contends that upon the death of her husband she was divested of all her community property; that thereafter as survivor she had only the personal right to be supported and maintained for her lifetime; that the 1935 gift to the children consisted "solely of the Taxpayer's personal right to support and maintenance from one-half of the Masterson property"; and that this right had no market value, or at most had a value not exceeding the total of exemptions and exclusions allowed by the gift tax act. On the other hand, the Commissioner contends that by the instrument of August 19, 1935, the taxpayer gave the children a full one-half interest in fee in the property formerly constituting the community estate of herself and her deceased husband, together with all accretions since his death. In the alternative, the Commissioner urges affirmance of the decision of the Board of Tax Appeals.

The case will and does become simple if we do not hurry over the controlling facts: (1) The Masterson estate consisted of community property. (2) The instrument executed by the husband and wife in 1928 is both a will and a covenant between the parties. (3) By the terms of the joint will and covenant, when R. B. Masterson died, a life interest in his one-half of the community estate was vested in his wife, Anna Eliza Masterson, and the remainder in fee vested in his six children. (4) When Anna Eliza Masterson had the will of her husband probated, and became independent executrix, and took over the property, and accepted benefits under the will, she thereby waived her original community interest in the property and became bound by the terms of the joint will and covenant made and entered into with her husband. Thereafter she retained only a life interest in the one-half of the community estate formerly belonging to her, and the fee remainder vested in the six children.

■■ It is not necessary to seek citation in support of the contention that Anna Eliza Masterson waived her community interest in the estate, and by acceptance of benefits under the will became bound by the terms and express provisions of the joint will and covenant. The case of Wyche v. Clapp, 43 Tex. 543, which is so strongly urged by the Commissioner as being against this proposition, seems to recognize the soundness of this contention in this language: "But when one of the parties to such an agreement is a married woman, it could have no binding force against her estate, it would seem, unless it was consummated in the manner prescribed by law for the execution of contracts *by femes covert, or she had in some way bound or estopped herself from denying it after she became free from coverture.*" (Italics ours.) Of course, the instrument executed by the husband and wife in 1928 was not probated as the will of the wife for she was still living, and no contention is made that this could be done. The fact is simply this, Anna Eliza Masterson bound herself by waiving her community interest and accepting in lieu thereof a life interest in all of the property in accordance with the terms of the joint will and covenant. A reference to the Texas cases will disclose that they do not conflict with this holding, but that on the contrary they recognize the rule that the wife can, when free from coverture, waive and abandon her community interest. See Larrabee v. Porter, Tex.Civ.App., 166 S.W. 395; Rossetti v. Benavides, Tex.Civ.App., 195 S. W. 208.

■ By the instrument of August 19, 1935, Anna Eliza Masterson relinquished

and gave to the six children, share and share alike, one-half of what she then owned. All that she then owned was a life estate in all the property, and she, therefore, conveyed to the children one-half of her life estate, plus the accretions earned and on hand from this one-half. The fact that she designated the gift as a release of a "limited life estate" in and to her "undivided one-half interest" in the entire community estate, adds nothing to and takes nothing from the gift.

■ The Board properly held that the gift was of a life estate in one-half of the original community estate, plus the net accretions to this one-half.

■■ The motion to enlarge the record so as to include proceedings in the Texas State Court is denied, and those proceedings are not before us as evidence. So far as the legal questions decided by the Texas State Court are concerned we take judicial knowledge of the decision. The case was decided by the Texas District Court subsequent to the decision of the Board of Tax Appeals. The United States was not a party to the suit and could not have been made a party as it never consented to be sued in that court. We are not bound by that decision, and to the extent that it differs from what we have said we do not agree with it.

The petitions of the Commissioner and the taxpayer are denied, and the decision of the Board of Tax Appeals is affirmed.

HOLMES, Circuit Judge (dissenting).

In solving the problems before us, much confusion may be avoided by bearing in mind that there is no question in this case of the right of the survivor to revoke the joint will and covenant. She has never attempted to revoke it, and everything done by her has been consistent with its provisions as she understood them. So the only questions are with reference to the intention of the parties. When was the will of the survivor to take effect? When were the estates to vest? What is the law of Texas on the subject? Shall we follow the highest court of the state or make a choice between its intermediate appellate courts?

I agree that the instrument before us is a valid joint will and covenant, and that the survivor became bound by its provisions

when she probated the will and accepted benefits under it, but I insist that the parties did not intend for it to take effect, and the Supreme Court of Texas has held that from the very nature of such an instrument it could not take effect, as a joint will while one of the parties survived.

The majority holds that the widow is estopped to deny the validity of the joint will and covenant, but it disregards the fact that she is also estopped to claim that the instrument took effect as a joint will upon the death of the one dying first. By probating the husband's will separately and paying estate taxes on his half only, the widow put a construction upon the joint will inconsistent with the contention that she lost title to her half upon his death or the probate of his will. By her conduct she construed the joint will to take effect separately; but it is not necessary to invoke the doctrine of estoppel to uphold a construction that is impelled by the law of Texas from the very nature of the instrument being construed. [1]

I maintain that the covenant cannot do service here, because the survivor never agreed to give or convey her property to the children, but only to will it to them. I think the only beneficial interest that the survivor took under the will of her husband was the right to support and maintenance from the estate of the deceased. This life interest is defined and limited in the same sentence that creates it. An ordinary life tenant is not restricted to support and maintenance, but is entitled to all the rents and profits with corresponding duties as to payment of taxes and other expenses. The survivor in this case took no such life tenure, and, if necessary, might look to the corpus for her support. She, of course, took nothing under her own will, but under the covenant was to retain her entire estate intact as a part of the joint property until her death or until she disposed of it by distribution to the children.

The question presented is whether the taxpayer made a taxable gift to her children and step-children in 1935; and, if so, the value of the estate transferred by gift. In 1928 she and her husband had

---

[1] Speaking of joint wills, the Supreme Court of Texas says that from the very nature of such an instrument it cannot take effect as a joint will while one of the parties survives, and that neither does it authorize a court of equity to fasten a trust upon the estate of the defaulting party. Wyche v. Clapp, 43 Tex. 543, 548, 549.

executed a joint will and covenant in which each appointed the survivor executor or executrix of the estate of the one dying first, gave to the survivor certain rights in the entire estate, and made the children and step-children the ultimate beneficiaries of the entire community property, except as to certain specific bequests not important here.

This instrument was duly probated as the last will and testament of R. B. Masterson, the widow qualifying as executrix thereunder. The intention of the parties thereto is clearly expressed therein, and is controlling as to the property rights of the survivor. No effort was made to probate her will; and in the estate tax return, filed by her as executrix of her deceased husband, only one-half of their community property was included. This was evidently upon the theory that her half of the community would not pass under the joint will until her death, though the husband's half passed upon his death.

In August, 1935, the widow executed an instrument by which she "released and relinquished" to said children her one-half interest in substantially the entire community estate as it existed immediately prior to her husband's death, together with the increased value subsequently accruing thereto. This is the gift sought to be taxed. The widow filed a gift-tax return in which she claimed that she had given to the donees only her limited life estate, and that its value was to be ascertained by the reasonable costs of her support and maintenance.

In the instrument of August 19, 1935, the taxpayer took pains to make clear that she was relinquishing only her one-half interest in the joint estate as it existed immediately prior to her husband's death, plus accretions since that time, and that she was not referring to the one-half formerly belonging to him. After stating this, she added: "It being distinctly specified that this relinquishment relates to my community one-half in the joint estate formerly belonging to R. B. Masterson and myself, and not to the one-half formerly belonging to him." She further released "the accretions to said undivided one-half interest," and agreed thereafter to look for her support and maintenance only to the limited life estate granted to her by the will of her husband.

It would be difficult to use language indicating more clearly than hers that she was not giving away the limited life interest carved out of the moiety that formerly belonged to her husband. Her intention being to donate only what she always owned, not what she took under the will of her husband, let us see what these respective interests were and the source of her title thereto. Immediately prior to the death of the husband, he and his wife each owned an undivided one-half interest in their community property. The joint will undertook to dispose of all of it, one-half upon the death of the spouse dying first, the other half upon the death of the survivor. In the meantime the entire estate was to remain intact. Neither spouse intended to part with title to his or her property prior to his or her death. We should not confuse the will with the contract; it is elementary that a will speaks only from the date of the death of the testator. The survivor was to retain his or her community interest for life subject only to the contractual obligation to make an identical disposition of it by last will and testament. One does not lose title to property by making a valid contract to will or convey it to some one.

In lieu of such testamentary disposition, the covenant permitted the survivor to distribute one-half of the joint estate to the children during her life. As fee-simple owner of the property donated, she exercised this privilege under the express provision of paragraph two, part three, of the joint will and covenant. She designated the subject of the gift as "my community one-half," not "the one-half formerly belonging to him." The half interest that the survivor already owned did not come to her under the will of her husband or by the provisions of the covenant, but came to her by virtue of her marital rights under the laws of Texas.[2] If the testators had intended that the will of the survivor should take effect before the death of the survivor, the parties would not have directed that the joint estate be disposed of upon the death of the survivor.[3]

We do not need to look beyond the four corners of the document to ascertain

---

[2] Hopkins v. Bacon, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249.

[3] See joint will and covenant, par. one, part three.

its nature, intent, and legal effect. It is not a deed, which takes effect from the date of its delivery to the grantee; it is a joint will and covenant in classic form. The intention of the parties and their respective obligations are fully stated therein. The whole scheme of the instrument shows the testamentary nature of what the parties intended to do. They desired to make a joint disposition of their property by will upon the death of the survivor. Neither could devise or bequeath more than half of the whole, because that was all that either owned. They waived their respective community rights only for the purpose of making a joint testamentary disposition of their community property upon the death of the survivor or upon their contemporaneous deaths. The provision that neither of them should execute any other will dealing with their estate indicates that each was retaining title to his or her half interest until his or her death; otherwise it was unnecessary to obligate the survivor not to execute any other will dealing with their estate.

The construction I put upon the instrument is that the parties intended it to take effect as the separate will of the one dying first and to be probated as such; that the community estate should be left intact until the death of the survivor, when the identical instrument should be probated again as the will of the latter.[4] The estates were to be wound up separately as to taxes, funeral expenses, court costs, and debts owing by each decedent. This was necessary for obvious reasons, and the parties of course knew it. The estate of the first decedent in reason could not be kept open indefinitely until the survivor died.[5] Para-

graphs two and three, part two, also indicate that the survivor was not to lose title during life to a fee-simple one-half interest, except by releasing it to the children. In event of remarriage of the survivor, one-half of all the estate was to vest immediately in the children. This indicates that they thought remarriage would revoke the instrument, and in that event desired the full half-interest of the decedent to vest in the children immediately.

The taxpayer formerly owned one-half of this vast estate. She is now reduced to reasonable support and maintenance from the half formerly owned by her husband. When, prior to this gift, did she lose title to her former half-interest? Not by her last will, because she is still living; not by her husband's will, because he did not attempt to dispose of her property; not by the covenant, because it only obligated her to make a testamentary disposition of her community property. The joint instrument empowered her to distribute one-half to the children. The result is that the children now have a fee-simple interest in the widow's half with its accretions. The widow has comparatively little, except the right to support for life from the decedent's share. This construction of the joint will harmonizes with the express language of the instrument itself, and with the conduct of the widow in probating it as the separate will of her husband, in paying estate taxes on only one-half of the joint property and in distributing her half (not his half) to the children by gift.

In Wyche v. Clapp, 43 Tex. 543, there was a joint will by husband and wife.

---

[4] In Page on Wills, 2nd Ed., Sec. 87, it is said:

"As to the wills of the third type—those by which the testators jointly devise their joint interests to third persons, or treat their separate property as a common fund out of which they provide for third persons—there has been more diversity of opinion. The great weight of authority is that the will of this type is to be probated on the death of each testator as the separate will of the decedent, and that, as said before, if this can not be done, the instrument should be refused probate as a will altogether.

"This last rule seems to rest upon sound policy. The funeral expenses and debts of the decedent should be paid as soon as is practicable, and the estate set-

tled. To delay such payment until the death of some one other than testator, an event which may not occur for years, would make the prompt and orderly settlement of decedent's estate impossible."

Among the cases cited in a note are: Dias v. De Livera, 5 App.Cas. 123; Evans v. Smith, 28 Ga. 98, 73 Am.Dec. 751; Keith v. Miller, 174 Ill. 64, 51 N. E. 151; Gerbrich v. Freitag, 213 Ill. 552, 73 N.E. 338, 104 Am.St.Rep. 234, 2 Ann.Cas. 24; Hill v. Harding, 92 Ky. 76, 17 S.W. 199, 437; In re Davis' Will, 120 N.C. 9, 26 S.E. 636, 38 L.R.A. 289; 58 Am.St.Rep. 771; Betts v. Harper, 39 Ohio St. 639, 48 Am.Rep. 477; Wyche v. Clapp, 43 Tex. 543.

[5] A decade has passed, and she still lives.

The husband died first, said instrument was admitted to probate as the will of the deceased, and the widow qualified as executrix under it. The court held she was not estopped to deny that her half of their community property passed by his will. It said, "title against the true owner * * * will not ordinarily be presumed, unless to prevent fraud and injustice." In that case, as in this one, the husband acknowledged in his will that the wife had full testamentary powers; but the Texas court refused to presume that her "unquestionable interest in the property" had been divested out of her by estoppel. It held that a joint will was valid, and might be admitted to probate on the decease of either of the parties, but could not take effect as a joint will while one of them survived; that such an instrument does not authorize a court of equity to fasten a trust upon the estate of the defaulting party or warrant its dealing with the survivor as a debtor previous to his death for his half of a legacy so bequeathed. This decision has never been overruled by the Supreme Court of Texas.[6] Since Wyche v. Clapp is a decision of the Texas Supreme Court, the decisions of lower courts[7] should be disregarded to the extent, if any, that they may be out of harmony therewith.

Finally, the doctrine of elections is not applicable.[8] In accepting benefits under her husband's will, the widow merely ratified a contract made by her under disability of coverture. Her ratification did not alter the joint will, but confirmed it; it did not change her contractual obligation, but made it enforceable under the law. That obligation was to make no other will dealing with their joint estate and not to modify or revoke the joint will already made. The ratification of one's voidable act is a very different thing from an election between remedies afforded one by the act of another. If the husband had made a separate will undertaking to dispose of their joint property, and the widow had elected to accept benefits under it, the doctrine of elections would have applied and the whole estate would have been regarded as his property.[9] In this event an estate tax would have been payable on all of it, and the widow would have lost title to her interest under the doctrine of elections. On the other hand, when he did not undertake to dispose of her property but recognized her title and testamentary capacity as to one-half of it, and bound her to make no other will, it proves conclusively that he intended to dispose of only his undivided interest.

Knowing that the instrument by its very nature could not take effect until the death of the survivor, the parties bound each other by solemn covenant to make no other will, and expressly provided that their joint estate should be disposed of upon the death of the survivor or upon their simultaneous deaths. The widow having so construed the will for the purpose of paying estate taxes is now estopped to change her position to the prejudice of the United States in the matter of gift taxes.

If the opinion of the majority is correct, this is the result: upon the probate of the husband's will the children took a vested remainder in fee, not only in his estate but in that of the surviving widow, although the parties to the instrument never intended to dispose of her property until her death. This is a violation of the maxim nemo est haeres viventis and its corollary no one can be a devisee or legatee until the testator dies.

---

[6] See also Aniol v. Aniol, 127 Tex. 576, 94 S.W.2d 425; Gorman v. Gause, Tex. Com.App., 56 S.W.2d 855; Thompson on Wills, 2nd Ed., Sec. 202.

[7] Larrabee v. Porter, Tex.Civ.App., 166 S.W. 395; Rossetti v. Benavides, Tex. Civ.App., 195 S.W. 208; Moore v. Moore, Tex.Civ.App., 198 S.W. 659; Sherman v. Goodson's Heirs, Tex.Civ. App., 219 S.W. 839; Heller v. Heller, Tex.Civ.App., 233 S.W. 870; Wagnon v. Wagnon, Tex.Civ.App., 16 S.W.2d 366; French v. French, Tex.Civ.App., 148 S.W.2d 930.

[8] "In order that the necessity for an election shall take place, the testator must affect to dispose of property which is not his own, and he must also, make a valid gift of his own property. If both of these requisites do not occur, there is no case for an election." Bispham's Principles of Equity, p. 501, citing, among other cases, Smith v. Butler, 83 Tex. '126. See, also, Pomeroy's Equity, Vol. 2, Sec. 505 (a), and the following Texas decisions: Autrey v. Stubenrauch, Tex.Civ.App., 133 S.W. 531; Slavin v. Greever, Tex.Civ.App., 209 S.W. 479; Waller v. Dickson, Tex.Civ.App., 229 S. W. 893; Farmer v. Zinn, Tex.Civ.App., 261 S.W. 1073; Farmer v. Zinn, Tex. Com.App., 276 S.W. 191; Furche v. Sailer, Tex.Civ.App., 8 S.W.2d 334.

[9] See Texas decisions cited in Note 8.