## FURCHE et al. v. SAILER. (No. 10093.)

Court of Civil Appeals of Texas. Dallas. April 28, 1928.

Rehearing Denied July 14, 1928.

**1. Husband and wife ☜254—Realty purchased after marriage with funds acquired during coverture was "community property."**

Realty purchased by decedent after his marriage with funds acquired during coverture constituted "community property."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Community Property.]

**2. Wills ☜782(12)—Will assuming to dispose of community property held to put widow to her election.**

Will under which testator in same paragraph assumed to give his widow a life estate in his separate property and in community property, with remainder to grandchildren, *held* to put

widow to her election to claim under the will as a devisee or against it as survivor in the community, notwithstanding testator's use of the word "my" in disposing of such property.

**3. Wills ⬦⟹778—One accepting benefit under will must adopt instrument in its entirety.**

One who accepts a benefit under a will must adopt the instrument in its entirety, in so far as it relates to his rights under the instrument, and must renounce every right inconsistent with it.

**4. Wills ⬦⟹792(4)—Widow qualifying as executrix, filing inventory, and accepting devise under husband's will, elected to take under will.**

Where widow, whose husband's will undertook to dispose of community estate, received benefits of life estate in husband's community interests in such lands and in his separate property, duly qualified as executrix, filed inventory thereunder, took possession of property devised to her, and received rents thereof, she thereby elected to take under the will.

**5. Wills ⬦⟹792(3)—To constitute "election to take under will," party must have had knowledge of his rights and intention to elect.**

In absence of statutory regulations, it is necessary, in order to constitute "election" to take under a will, that party must have had knowledge of his rights, including condition and extent of the estate and of his duty to choose between the inconsistent rights and intention to elect as shown by his words and acts viewed in light of all the circumstances.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Election.]

**6. Wills ⬦⟹800—Ignorance of rule does not prevent estoppel from arising against party taking benefit of testamentary provision in his favor.**

Ignorance of the rule that a party taking benefit of provision in his favor under a will is estopped to assert the invalidity of that instrument, or to claim rights inconsistent therewith, does not prevent an estoppel from arising against him.

**7. Wills ⬦⟹802(2)—Under the evidence, remaindermen held not to have lost their remainder interests or interests in realty purchased with income therefrom by waiver, acquiescence, estoppel, laches, or limitation.**

Where widow elected to take under will purporting to give her a life estate in community property and in husband's separate estate, with remainder to grandchildren, held, under the evidence, that grandchildren did not lose right to their remainder interests or interests in other realty purchased by trustees with income from such property, by waiver, acquiescence, estoppel, laches, or limitation.

**8. Wills ⬦⟹488—Testimony as to testator's statements respecting provisions for his wife and grandchildren held inadmissible, as hearsay, to vary unambiguous will.**

In an action involving title to interests in realty as remaindermen under testator's will purporting to dispose of his wife's interests in community property, testimony respecting what testator understood to be the meaning of "community property" and other statements by him respecting provisions made by him for his wife and grandchildren *held* inadmissible, as hearsay, for purpose of contradicting, enlarging, or varying the terms of the will, particularly where will itself was not ambiguous.

Appeal from District Court, Dallas County; Royal R. Watkins, Judge.

Action by Arthur Furche and others against William Sailer. From a judgment for defendant in part, plaintiffs appeal. Affirmed in part, reversed and rendered in part, and reversed and remanded in part.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellants.

Locke, Locke, Stroud & Randolph, of Dallas, for appellee.

VAUGHAN, J. This suit was instituted August 9, 1926, by appellants Arthur Furche and Carrie Furche, residents of the state of California, against appellee, William Sailer, of Dallas, Tex., for title and possession of land in Dallas and Navarro counties, Tex., for rents and damages, and for partition. By amended petition, filed December 8, 1926, appellant Mrs. Carrie Furche, also of California, the mother of appellants Arthur Furche and Carrie Furche, joined as party plaintiff, claiming some right as an heir, in common with the two original plaintiffs, of Bertha Furche, a deceased sister of said plaintiffs and daughter of Mrs. Carrie Furche.

The property involved consists of a lot in Corsicana, Tex., and three lots on Elm street, in Dallas, Tex., devised by the will of August Furche, deceased, to his grandchildren; also two lots bought by G. H. Schoellkopf and Hugo W. Schoellkopf, trustees under the will of said August Furche, with funds which appellants alleged were derived from rents and revenues belonging to them.

The first count of the petition was in the form of an action of trespass to try title. In other counts it was alleged by appellants Arthur and Carrie Furche that each of them is entitled to a one-third interest in the tracts of land devised by the will of August Furche, and that they and their coappellant each own an interest in the tracts bought by the trustees, because funds given to them by the will of August Furche were used in part payment therefor.

Appellee pleaded not guilty, alleging that appellants Carrie and Arthur Furche are entitled to only one-sixth each of the Elm street lots devised by the will of August Furche, and that none of the appellants is entitled to any interest in the lots bought by the trustees; also that, if appellants Arthur and Carrie Furche were ever entitled to more than one-sixth each in the Elm street lots devised by the will of August Furche, or if any

of the appellants ever owned any interest in the lots bought by the trustees, they neglected to make timely assertion of their claim, and it became barred by limitation.

Appellants Arthur and Carrie Furche claim an interest in the property purchased by said trustees, on the ground that funds, in which they were entitled to an interest, were used in the payment of said respective properties.

Appellant Mrs. Carrie Furche claimed by proper allegations in the petition that funds belonging to Bertha Furche, her deceased daughter, who died without issue, were, with other funds, invested in property conveyed to G. H. Schoellkopf and Hugo W. Schoellkopf, trustees under the will of August Furche, and that she was entitled to recover a corresponding interest in the property acquired with such funds to the extent of one-half of the funds of her deceased daughter so invested.

The principal questions raised by the pleadings are: (a) Whether the will of August Furche devised the entire interest in the three Elm street lots, or only his community interest; (b) whether his widow, Mrs. Bertha Furche, was required to elect to take under said will or against it; (c) whether she did elect to take under said will; and (d) whether the appellants lost any of their rights by waiver, estoppel, laches, or limitation.

Appellants contended in the trial court and here contend: (a) That the will of August Furche was effective to devise the entire interest in the three Elm street lots and the lot in Corsicana, described in said will, to testator's wife, Bertha Furche, for life, with remainder in fee to his grandchildren Bertha, Arthur, and Carrie Furche, and William Sailer, share and share alike; (b) that Mrs. Bertha Furche elected and did take under the will of August Furche and was by her acts, with respect to the property devised by him, estopped to say that she did not so elect; (c) that August Furche, having devised the entire interest in the three Elm street lots to his wife for life, with remainder in fee to his grandchildren, share and share alike, and his wife, Mrs. Bertha Furche, having elected to take under said will, the trustees should not have treated the three lots on Elm street, described in the will of August Furche, as community property, as having been affected by the will of Mrs. Bertha Furche, but should have treated the same as disposed of by the will of August Furche to his grandchildren, share and share alike, and should have allotted to William Sailer only an amount equal to the amount allotted to each of the Furche children out of the net income; (d) that, the trustees having failed to allot and pay to the Furche children all of the income that they were entitled to receive under the will of August Furche, and having invested same in a lot 25x200 feet on Elm street, a lot at Ervay

and Orr streets, in the city of Dallas, appellants are entitled to an interest in said lots to the extent to which their funds and interest and profit derived from their funds were invested in said lots; (e) that appellants Arthur and Carrie Furche, in any event, are entitled to two-thirds of the three lots on Elm street and to two-thirds of the lot in Corsicana, devised by the will of August Furche to his wife for life and to his grandchildren in fee, share and share alike, and to the property bought by the trustees with funds which belonged to them, and which should have been paid to them or invested for them under the will of August Furche; (f) that limitation did not begin to run against appellants until the termination of the trust, December 20, 1925.

Appellee contended in the trial court and here contends: (a) That appellants were barred by the 2, 3, 4, and 5 year statutes of limitation, and by waiver, acquiescence, estoppel, and laches; (b) that the three Elm street lots described in the will of August Furche were community property of August and Bertha Furche, and that August Furche by his will did not devise, nor attempt to devise, any interest in said lots, except his community interest; (c) that Mrs. Bertha Furche was not put to her election whether to take under the will of August Furche or to claim her community interest in the property, and that she did not elect, but instead, claimed and took both the property devised to her by the will and that given her by law; (d) that appellants, shortly after the death of Mrs. Bertha Furche, were advised by the trustees that they intended to treat the three Elm street lots mentioned in August Furche's will as community property and allot the income one-half to William Sailer, under the terms of his grandmother's will, and the other one-half equally among the four grandchildren, and that appellants did not take steps to prevent such allotment of the income, and, by reason of their failure to take such steps, estopped themselves so to do; (e) that their acquiescence in the allotment of income, on the theory that the three lots on Elm street, described in the will of August Furche, were community property, and not disposed of in their entirety by his will for a long period of time, viz. until the termination of the trust on December 20, 1925, and are bound by such acquiescence.

The trial court agreed with appellee's contention and instructed the jury to return a verdict for appellee against appellants in all things, save and except that appellants Arthur and Carrie Furche were entitled to recover an undivided two-thirds interest in lot 14, block 241, of the Houston & Texas Central Railroad addition to Corsicana, and a two-sixths interest in the three Elm street lots described in August Furche's will. The verdict as instructed was returned.

On December 14, 1926, the court entered judgment that appellant Mrs. Carrie Furche take nothing, and that appellants Arthur and Carrie Furche take only a one-third interest each in the Corsicana lot and a one-sixth interest each in the three Elm street lots described in the will of August Furche. Appellants properly present said judgment and proceedings had in reference thereto to this court for review and revision.

On December 20, 1925, the two trusteeships on the part of G. H. Schoellkopf and Hugo W. Schoellkopf of Dallas, Tex., had ended; one such trusteeship was under the will of August Furche, who died November 17, 1907, and whose will was duly probated in Dallas county, Tex. The other such trusteeship was under the will of Mrs. Bertha Furche, the second wife and widow of August Furche, who died on May 16, 1912, and whose will was duly probated in Dallas county, Tex. The trusteeship under the will of August Furche was for the equal benefit of the survivors of four grandchildren of August Furche, to wit, the appellants Arthur and Carrie Furche, and their sister Bertha Furche, who died January 26, 1918, and the appellee, William Sailer. The three first mentioned were the grandchildren of August Furche by his first wife, whom he married at Quincy, Ill., September 29, 1864, and who divorced him June 25, 1872, on the ground that he had deserted her. August Furche and his second wife, Bertha Furche, from the date of their marriage lived together continuously, first at Corsicana, Tex., until about November 17, 1885, and thereafter at Dallas, Tex., until the death of August Furche in November, 1907, and Mrs. Bertha Furche, the widow, continued a resident of Dallas until her death in May, 1912. Appellee, William Sailer, was the only grandchild of August Furche by his second wife. Edward Arthur Furche, the father of appellants Arthur and Carrie Furche, the son of August Furche, and Lottie Sailer, the mother of William Sailer, the daughter of August and Bertha Furche, had died before either will was written. The Schoellkopfs' trusteeship under the will of Mrs. Bertha Furche was for the benefit of the appellee, William Sailer, alone. The properties involved are a 25-foot lot covered by a two-story building in Corsicana, which was the separate property of August Furche, and which continuously, from May, 1912, to December, 1925, the Schoellkopfs held as trustees under the will of August Furche for the equal benefits, first of the four grandchildren until the death of Bertha Furche, one of the grandchildren, in January, 1918, and thereafter for the equal benefit of the three surviving grandchildren, viz. appellants Arthur and Carrie Furche and appellee, Willliam Sailer. Such interest never had been questioned; consequently there was no controversy whatever in reference to this property. The sec-

ond property involved—the dispute over the interest owned, which constitutes the primary subject-matter of this litigation, and on which every other claim of appellants depends—consists of three adjoining lots, each 25x200 feet, comprising a single tract 75x200 feet, fronting 75 feet on the north side of Elm street, in the city of Dallas, and extending northwardly 200 feet to the south side of Pacific avenue, and covered by brick structures. This tract was acquired during the marriage of August Furche and Bertha Furche. The questions whether it was the separate property of August Furche or the community property of August Furche and Bertha Furche, and how it should be treated under the two wills, whether all under the will of August Furche, or one-half under his will and one-half under the will of Bertha Furche, are the pivotal questions to be determined in this litigation.

Following are the properties purchased with funds held by the Schoellkopfs as trustees under the wills of August Furche and Bertha Furche: Lot on Ervay street, purchased December 23, 1912; a lot 25x200 feet on Elm street, extending through to Pacific avenue, purchased January 7, 1918. Title to both lots was taken in the name of the Schoellkopfs as trustees under the will of Bertha Furche.

Following are the controlling items of August Furche's will, in so far as this suit is concerned:

"Item one: Subject to the payment of my debts, I bequeath to my beloved wife, absolutely, all property, real, personal and mixed, of which I may die seized and possessed, wherever situated; except, however, a certain brick store in Corsicana, Texas, and three lots, each 25x200 feet, on Elm street in Dallas, Texas, and known by ordinance designation as Nos. 363, 365 and 367, which said property is devised to my beloved wife for her natural life, with the remainder and fee over to my grandchildren, subject to the limitations hereinafter set forth.

"Item two: Subject to the life estate therein of my said wife, and certain stipulations recited later on in this will, I bequeath to each of my grandchildren, Bertha, Carrie and Arthur Furche and William A. Sailer, the children respectively of my deceased son and daughter, the said Corsicana and Dallas City property, share and share alike.

"Item three: In no event is the possession or legal title to the aforesaid property to rest in my said grandchildren until the youngest shall have attained the age of twenty-five years.

"Item four: Should my wife die before that time, then G. H. Schoellkopf and his son Hugo Schoellkopf are vested with the legal title and possession of said property until the said youngest grandchild shall have attained the age of twenty-five years, at which time the said property is to be delivered over to my said grandchildren, share and share alike. Should any one or more of them have died before said time, single and without issue, then his, her or their expectant interest is to vest in and be delivered over to the survivor or survivors in

equal parts. And I leave it exclusively with the judgment of the said trustees to distribute the property.

"Item five: Should all of my grandchildren die before the youngest reaches the age of twenty-five, without marriage or issue, then I bequeath the fee in as well as the life estate to the said property to my said wife. If said grandchildren, or any of them, should die before the youngest reaches twenty-five years of age, leaving a wife or child or children, then such grandchild. or grandchildren's interest, under this will, shall vest in such wife, child or children, share and share alike, conditioned, however, thatt the legal title and possession of all of the aforesaid property shall remain in said trustees until such time as the youngest grandchild, living or dead, would have become twenty-five years of age."

August Furche died November 17, 1907; his widow, Bertha Furche, qualified as independent executrix January 8, 1908, and filed an inventory and appraisement January 29, 1908, listing the "certain brick store in Corsicana," mentioned in August Furche's will, as separate property of testator, and the three lots on Elm street in Dallas, mentioned in said will, as community property of the testator and his widow. She listed all the other property of which he died seized as community property, except the three lots in Corpus Christi, which she did not mention or describe in the inventory. His will provided that it should be left exclusively with G. H. Schoellkopf and Hugo W. Schoellkopf to say what provision should be made for the support and education of the grandchildren, and that, after making annual provision for their education and support, the surplus income should be invested in real property.

Mrs. Bertha Furche executed her last will and testament of date February 6, 1912; the items material to this suit being as follows:

"First: Subject to the payment of my debts and certain legacies and incidental expenses, hereinafter referred to, I bequeath all my property, real, personal and mixed, to G. H. Schoellkopf and Hugo W. Schoellkopf, in trust, however, in accordance with the provisions of this will, for the benefit of my grandchild, William A. Sailer, until he shall have attained the age of twenty-five years.

"Second: My said property consists, at present, of community interest in lots 362, 365 and 367, on Elm street, in the city of Dallas, Texas, each of said lots being 25 by 200 feet; also lot 200x200 feet, known as 3708 San Jacinto street, on the corner of San Jacinto street and Washington avenue, in said city, county and state; also lot 75x150 feet on Chaparral street, in the town of Corpus Christi, Texas; also two lots in Celeste, Texas; also one-half acre of land in Corsicana, Texas; also all my money, notes, accounts, household and kitchen furniture and jewelry, and any and all other property which I may now own or die seized and possessed of.

"Said notes and accounts, and household and kitchen furniture and all other personal property, except my jewelry and oil paintings, to be reduced to cash, but said jewelry and paintings

to be preserved and kept for the benefit of my said grandson, and delivered to him when he shall have attained the age of twenty-five years.

"Third: Said money and proceeds of the sale of said notes, etc., together with the rents, fruits and profits of my said property, shall be appropriated for the following purposes:

"(1) The payment of all taxes, insurance, debts, repairs and other expenses incident to the preservation and management of my aforesaid estate.

"(2) The payment of such sum as may be necessary to support and educate my said grandchild, William A. Sailer.

"(3) The payment to the Greenwood Cemetery Association, of Dallas, Texas, the sum of five hundred dollars ($500) in trust, for the purpose of keeping up the lot in said cemetery where my deceased husband and daughter lie buried.

"(4) The payment to my beloved sisters, Mrs. C. Bohny of Dallas, Texas, and Mrs. M. Faust, of Comfort, Texas, two thousand and five hundred dollars ($2,500) each, as legacies.

"(5) To Clara Furche, of St. Louis, Missouri, niece of my deceased husband, a legacy of five hundred dollars ($500).

"(6) To St. Joseph's Orphanage, of Oak Cliff, Dallas, Texas, five hundred dollars ($500.00).

"(7) To the children of my brother, Carl Mirus, to wit, Carl Mirus and Augusta Mirus, of Corsicana, Texas, the sum of five hundred dollars ($500) each.

"Fourth: Subject to the foregoing provisions of this will, I bequeath to my beloved grandson, William A. Sailer, in fee, and absolutely, all property, real, personal and mixed, of which I may die seized and possessed, and wherever situated; together with my community one-half of all the rents of lots 362, 365 and 367, on Elm street, in Dallas City, Texas, until he is twenty-five years old.

"Fifth: If after the payment of the aforesaid charges against my estate there should be accumulated from the rents, fruits and profits thereof, or from any other source, any money or funds, then such money or funds shall be invested in the name and for the benefit of my said grandchild in real property.

"Ninth: Should my said grandson, William A. Sailer, die at any time before he attains the age of twenty-five years, without leaving wife or issue, then the aforesaid property No. 3708 San Jacinto street, in Dallas, and the lots in Celeste, Texas, and Corpus Christi, Texas, and all my other property, real, personal and mixed, herein devised to him, I hereby bequeath as follows:

"(a) To my said sisters, Mrs. C. Bohny, of Dallas, Texas, and Mrs. M. Faust, of Comfort, Texas, one-fourth (¼) each in fee.

"(b) To the two children of my brother, Charles, to wit, Charlie and Augusta Mirus, both now living with their mother in Corsicana, Texas, one-fourth (¼) between them, or one-eighth each in fee.

"(c) To Clara Furche, of St. Louis, Missouri, niece of my deceased husband, August Furche, the remaining one-fourth (¼) in fee.

"(d) The Elm street lots in the city of Dallas, aforesaid, to go as directed in my deceased husband's will, except one-half the rents thereof, which are bequeathed to my aforesaid sisters and brother's children, until December 20, 1925."

Subject to the payment of debts and cash legacies, she devised all of her property, real, personal and mixed, to G. H. Schoellkopf and Hugo W. Schoellkopf in trust for the benefit of her grandchild William A. Sailer until he should arrive at the age of 25 years, and named Hugo W. Schoellkopf as independent executor. At the time of Mrs. Bertha Furche's death, March 11, 1912, all of August Furche's grandchildren were minors.

On May 16, 1912, Hugo W. Schoellkopf qualified as independent executor under the will of Mrs. Bertha Furche, deceased, dated February 6, 1912, and on May 16, 1912, filed an inventory and appraisment of her estate. G. H. Schoellkopf and Hugo W. Schoellkopf took possession of the brick store in Corsicana and the three Elm street lots devised for life to Bertha Furche, with remainder to the testator's grandchildren described in August Furche's will, and all other property mentioned and described by Mrs. Bertha Furche in her will as trustees. During their trusteeship, said Schoellkopfs held possession of the three Elm street lots and the "certain brick store in Corsicana, collected the rents therefrom, treated one-half of the income from the Elm street lots as belonging to appellee, by the terms of Bertha Furche's will, and allotted the other one-half to August Furche's grandchildren, share and share alike. Hugo W. Schoellkopf about May 1, 1912, advised Mrs. Carrie Furche, mother of Bertha, Carrie, and Arthur Furche, of the death of Mrs. Bertha Furche. On or about May 5, 1912, Mrs. Carrie Furche had Volney C. Gunnell, an attorney of Ogden, Utah, write Hugo W. Schoellkopf trustee, suggesting that August Furche dealt with the three Elm street lots as "private property" and that Mrs. Bertha Furche dealt with them in her will as "community property," and asking whether the trustees would consider the lots as the property of the four grandchildren under the will of August Furche, or as property affected by the will of Bertha Furche. Messrs. Spence, Knight, Baker & Harris, attorneys of Dallas, at the request of said Schoellkopfs, replied to said letter, advising that the three Elm street lots were community property and would be considered and treated by the trustees and executors of the wills as community property of August and Bertha Furche; that the legal title and the possession were vested by the wills of August and Bertha Furche in G. H. Schoellkopf and Hugo W. Schoellkopf as trustees; and that the amount to be expended for the education and support of the beneficiaries (the grandchildren) was "left to the unreserved discretion of the trustees." Appellant Mrs. Carrie Furche, acting for her children Bertha, Carrie, and Arthur Furche, wrote Hugo W. Schoellkopf that Mrs. Bertha Furche's will, insofar as it attempted to give to William Sailer more than an equal share of the Elm street lots, would not stand in law. To this Mr. Schoellkopf

replied, assuring her that August Furche had no right to dispose by his will of more than one-half of the Elm street lots, and saying that he was absolutely certain it would avail her nothing to take the matter into court. The grandchildren Bertha, Carrie, and Arthur Furche were never informed by Mrs. Bertha Furche, nor by the trustees under August Furche's will, nor by any one else, that August Furche had at the time of his death any property which would have descended to them if he had died intestate, and were never informed as to the condition of his estate, nor as to how much property Mrs. Bertha Furche was taking under said will, nor as to whether it was separate or community property.

G. H. Schoellkopf and Hugo W. Schoellkopf, trustees, used some of the income from the three Elm street lots and the Corsicana lot, devised by the will of August Furche, to pay part of the consideration for the lot 25x 200 feet on Elm street, and the lot at the corner of Ervay and Orr streets, in Dallas, purchased by them, and had said lots conveyed to them as trustees under the will of Bertha Furche. In keeping their books as trustees, the Schoellkopfs opened an account with the Elm street lots, devised by the will of August Furche, and an account with the Corsicana lot. They credited to Bertha, Carrie, and Arthur Furche three-fourths of the net income from the Corsicana property until Miss Bertha Furche's death, and thereafter two-thirds of the net income to Carrie and Arthur. They credited one-fourth of the net income from the Corsicana property before the death of Miss Bertha Furche, and thereafter one-third of said income to the account of the estate of Mrs. Bertha Furche. They credited to Bertha, Carrie and Arthur Furche three-eighths of the income from the three Elm street lots until the death of Miss Bertha Furche, and to Carrie and Arthur Furche two-sixths of the income of said lots after her death. The balance of the rents from the three Elm street lots they credited to the account of the estate of Mrs. Bertha Furche. At the termination of the trust, on December 20, 1925, the trustees paid to appellants Arthur and Carrie Furche each approximately $3,500. They did not know then that the trustees had invested rents from the property devised to them by August Furche. They knew nothing of the purchase of the Elm street lots from the Busch estate, and the Ervay street lot from Alexander & Hogsett. The Furche grandchildren did not get anything from the estate of August Furche during the life of Mrs. Bertha Furche; however, she made some donations to them out of her own means, and, after her death, did not get anything, except a part of the income from the "certain brick store in Corsicana" and a part of half of the income from the three Elm street lots described in item 1 of August Furche's will. After qualifying as executor

under the will of August Furche and filing an inventory and appraisement of his estate, Mrs. Bertha Furche collected, as rents from the three Elm street lots devised to her for life with remainder to testator's grandchildren, $28,003, and from the "certain brick store in Corsicana," $2,740. She took possession of all of the property devised to her under the will of August Furche, and used and enjoyed the same, except one-half of the three Elm street lots, as her own until her death, March 11, 1912, and devised all of same by her last will and testament to her grandson William A. Sailer, the appellee, contingent upon his living to be 25 years of age, excepting $7,500, which she bequeathed as follows: $500 to Greenwood Cemetery Association; $500 to Clara Furche, niece of August Furche; $500 to St. Joseph's Orphanage; $500 to each of the two children of her brother, Carl Mirus; and $2,500 to each of her sisters Mrs. Christian Bohny and Mrs. Matilda Faust. The payment of these legacies exhausted all of the cash on hand at the time of Mrs. Bertha Furche's death.

From the facts we have carefully detailed, as having been established by the evidence introduced as a whole, Mrs. Bertha Furche, at the time of the death of August Furche, knew the difference between separate and community property; she distinguished between the two characters of property in the inventory and appraisement filed by her in the August Furche estate. The very language employed by the testator, August Furche, in making his bequest, clearly evidenced the fixed intention on his part to absolutely dispose of the entire interest in the three lots on Elm street described in the first item of his will. That Mrs. Bertha Furche understood that such was the effect accomplished by the language of the will is made certain— in other words, removed from the very peradventure of a doubt—by item 9 of Mrs. Bertha Furche's will, supra, which provides that, if her grandson William Sailer should die before attaining the age of 25 years, without leaving wife or issue, the Elm street lots in the city of Dallas should go "as directed in my husband's will, except one-half the rents thereof, which are bequeathed to my aforesaid sisters' and brother's children until December 20, 1925." How did her deceased husband direct that said Elm street lots should pass under his will? The plain and unmistakable language of items 1 and 2 thereof answer the query. By item 1 he bequeathed to Mrs. Bertha Furche all property of whatever character owned by him at the time of his death absolutely, except "a certain brick store in Corsicana, Texas, and three lots, each 25x 200 feet, on Elm street, in Dallas, Texas," which property he devised to her for her natural life, with the remainder in fee to his grandchildren; that he only intended to devise to the said Mrs. Bertha Furche a life estate in all of said property, so excepted

from the absolute bequest made by him, and, subject to such life estate, intended that all of said property should pass and vest absolutely in his four grandchildren Bertha, Carrie, and Arthur Furche and William A. Sailer, is clearly and specifically evidenced by item 2 of the will of said August Furche. To hold otherwise one would have to disregard the plain, commonly accepted import of the language used; namely, that the testator bequeathed to his wife, Mrs. Bertha Furche, absolutely all property owned by him at the time of his death, which, of course, included all property, whether separate or community, except the Corsicana and Elm street properties described in said will, which were devised to her for her natural life. Not a part of this property—that is, the community interest of the testator—but all of said property, was to pass under said will to his four grandchildren as if the same constituted in fact the separate property of testator, and that, subject to said life estate of the said Mrs. Bertha Furche, the absolute title to all of said property was bequeathed by testator to his four grandchildren named in item 2 of said will, to share and share alike, with the limitation contained in item 3 that the possession or legal title to said property should not rest in said grandchildren until the youngest "shall have attained the age of twenty-five years." Now, what could Mrs. Bertha Furche have had in mind to have called forth the use of the language, which we are to assume was the language employed to express her will in reference to the three Elm street lots, being section (d) of item 9 of her will, namely, "The Elm street lots in the city of Dallas aforesaid to go as directed in my deceased husband's will, except one-half the rents thereof, which are bequeathed to my four said sisters and brother's children, until December 20, 1925," further than that she understood and had in mind the language of August Furche's will disposing of said lots, first by bequeathing to her the life estate thereof, with the absolute title, subject to said life estate, bequeathed to the four grandchildren of the testator, August Furche, not as to the community interest that said testator in fact owned therein, but that all of said lots were so bequeathed by him as his property, and that thereby he intended for the title thereto to pass to the said Mrs. Bertha Furche for life, with the remainder absolutely to the four grandchildren named in said item 2 of his will.

[1] From this no other reasonable conclusion can be reached than that Mrs. Bertha Furche undoubtedly knew the difference between separate and community property, and that August Furche, by his will, intended to dispose of the entire interest in the three Elm street lots. That said three Elm street lots were community property, is equally clear, does not rest in doubt or uncertainty, as the evidence introduced, in whole or in part, as

to whether same was community or separate property of August Furche, established that said property was purchased after and during the marriage of August Furche and Mrs. Bertha Furche; that the funds used in the purchase of same were acquired during their coverture, and the evidence failed to show that said funds were the separate property of August Furche, or acquired by him by devise, gift, or descent. While it is true the evidence established some circumstances indicating that some of the funds so invested might have been the separate property of August Furche, yet same was far from being of sufficient cogency to have authorized the court to have submitted the issue, based on the claim that said lots were the separate property of August Furche, to the jury. Therefore the court did not err in instructing the jury that said lots were the community property of the said August Furche and Bertha Furche.

[2] We are now brought to consider the propositions of appellant contending that the will put the widow, Mrs. Bertha Furche, to her election whether to take under the will or under the law. August Furche undoubtedly, as we have above indicated, intended to devise the three lots in their entirety; that is, he intended to dispose of all the estate and interest therein, and not merely his community interest. That the language employed by him in the making of his will unerringly evidences such intention, we think it self-evident, and do not believe that same is susceptible of any other construction that would be in harmony with the context of the will. The "certain brick store in Corsicana" was the separate property of the testator. It is apparent to us that he considered the Corsicana property and the Elm street lots in the same terms, and treated them in the same way; that is, as being disposed of by his will. By the language of item 1 of his will, his intention to put the Corsicana property and the Elm street lots in the same class, and to limit the wife's interest therein to a life estate, is demonstrated in no uncertain terms. The same testamentary intent is gathered with equal clearness from items 2, 3, 4, and 5 thereof, supra.

We think the following excerpts from items 2, 3, 4, and 5 demonstrate conclusively that the testator had in mind to deal with the property as a whole, and not with his mere community interest therein, viz. of item 2, "the said Corsicana and Dallas city property"; of item 3, "the aforesaid property"; of item 4, "said property" and "the said property"; and of item 5, "the said property" and "the legal title and possession of all of the aforesaid property," if, as used in connection with other language of said items, said expressions are to be given the effect in consonance with the entire language of the will. It does not occur to us that language could have

been used that would have more explicitly expressed the will of August Furche that his grandchildren should take the entire Corsicana lot and the Elm street lots in equal shares. There is no language in the will, from its opening to close, that indicates testator intended to devise only his community interest in the Elm street lots. To the contrary, it would be a distorted construction of the language used to conclude therefrom that he meant to dispose of only one-half of the Elm street lots. Assuming that said Elm street lots had been owned by August Furche as his separate property, would the language used be ample to effectually dispose of same? If so, does it not follow that it was testator's intention to dispose of said lots as if same belonged to him? We think both questions should be answered in the affirmative. If it was testator's intention to give the Elm street lots to his grandchildren, share and share alike, was Mrs. Bertha Furche required to elect?

[3] It is a well settled rule of law in this state that one who accepts a benefit under a will must adopt the instrument in its entirety, in so far as it relates to his rights under such instrument; further, that if A gives to B property belonging to C, and by the same testamentary devise gives to C other property belonging to himself, C cannot take under the will without recognizing B's right to take the property devised to him. This rule is recognized and upheld in the case of Smith v. Butler, 85 Tex. 126, 19 S. W. 1083, in which it was held:

"'The principle of election is that he who accepts a benefit under a will must adopt the whole contents of the instrument, so far as it concerns him, conforming to its provisions, and renouncing every right inconsistent with it.' Philleo v. Holliday, 24 Tex. 45. 'Some free, disposable property must be given to the electing donee which can become compensation for what the testator sought to take away.' Bigelow, Estop. 645. The compensating thing, however, need not be the equivalent in value of that taken from the person put upon her election."

All of the property that passed under the will of August Furche, with the exception of a "certain brick store in Corsicana," was the community property of testator and his widow, Mrs. Bertha Furche. Of the property devised by testator to Mrs. Bertha Furche absolutely, she owned an undivided one-half interest at law and acquired through the will of August Furche his one-half interest. In addition thereto, she took under the will a life estate in the "certain brick store in Corsicana" and the three Elm street lots in Dallas, Tex. The right of property acquired by Mrs. Bertha Furche under the will was, therefore, the community interest of August Furche in the property willed to her absolutely, the life estate in the Corsicana property,

and the three Elm street lots, through which she acquired the right to receive and appropriate as her own all of the rents arising from the Corsicana property and the three Elm street lots in Dallas during her life. The rights she took under the will were those she was not entitled to under the law. Therefore the query is, Was it possible for Mrs. Bertha Furche to take anything under the will of August Furche without renouncing her right to claim a community interest in the three Elm street lots? Was the property bequeathed or devised to her by the will, which she was not entitled to take under the law, compensation for her community interest in the three Elm street lots? Mrs. Bertha Furche had a community interest in the three Elm street lots. What, if anything, did the testator give Mrs. Bertha Furche to compensate her for her community interest in said lots? We find the answer to this query to be as follows: First, she was given a life estate in the Corsicana property, which was testator's separate property, and a life estate in testator's one-half community interest in the three Elm street lots. The evidence shows that she received as rents from the Corsicana and Elm street lots in four years and a few months, after August Furche's death in November, 1907, over $30,000 in cash, about $28,000 of this being from the Elm street lots, or about $14,000 was from the testator's community interest therein. Second: In addition to the life estate in the above lots, testator gave to her all of his other property. This included about $14,000 in cash, a lot on Washington street in Dallas, worth $11,000, and his three lots in Corpus Christi, which were sold after the death of Mrs. Bertha Furche for $12,500; some lots in Corsicana, appraised at $100; some lots in Celeste, appraised at $150; and household and kitchen furniture appraised at $600. August Furche had no children living at the time of his death. His grandchildren, therefore,. would have been entitled to receive, had Mrs. Bertha Furche refused to take under the will, one-half of the $14,000 on hand at the time of testator's death, and one-half of the following real estate: Three lots in Corpus Christi, lot on Washington street in Dallas. Tex., two lots Nos. 6 and 7, block 128, in Corsicana, Tex., three lots in Celeste, Tex., and household and kitchen furniture, the one-half interest in said properties approximately amounting to $19,175. And in addition thereto, had Mrs. Bertha Furche elected not to take under the will, testator's grandchildren would have been entitled to receive a portion of $30,000 rents from the "certain brick store in Corsicana" and the three Elm street lots, viz. one-half of the $28,000 rents received account of the three Elm street lots, and two-thirds of the $2,000 rents received account of the "certain brick store in Corsicana." These facts clearly establish that some free dispos-

able property was given to Mrs. Bertha Furche, which compensated her for her community interest in the three Elm street lots devised by testator to his four grandchildren.

We think it must be assumed that Mrs. Bertha Furche knew she was entitled by law to only her half interest in such property as had been acquired after her marriage with August Furche, and that if she took under the will any other property or interest, she would have to adopt the entire contents of that instrument and renounce every right inconsistent therewith. Applying the rule of decision announced in the following cases, we are of the opinion that Mrs. Bertha Furche was required to elect under the terms of the will whether she would take thereunder or under the law of descent and distribution, viz.: Farmer v. Zinn, 276 S. W. 191, opinion by Commission of Appeals affirming same case by Court of Civil Appeals, 261 S. W. 1073; Avery v. Johnson, 108 Tex. 294, 197 S. W. 542; Dunn v. Vinyard (Tex. Civ. App.) 234 S. W. 99; Smith v. Butler, 85 Tex. 126, 19 S. W. 1083; Gilroy v. Richards, 26 Tex. Civ. App. 355, 63 S. W. 666, 667; Nelson v. Lyster, 32 Tex. Civ. App. 356, 74 S. W. 54; Owens v. Andrews, 17 N. M. 597, 131 P. 1004, 49 L. R. A. (N. S.) 1072, and extensive notes; Hoggard v. Jordan, 140 N. C. 610, 53 S. E. 220, 4 L. R. A. (N. S.) 1065, and note, 6 Ann. Cas. 332; Smith v. Wells, 134 Mass. 11; Meech v. Meech's Estate, 37 Vt. 414; Farmington Sav. Bank v. Curran, 72 Conn. 343, 44 A. 473; Weller v. Noffsinger, 57 Neb. 455, 77 N. W. 1075; Collins v. Carman, 5 Md. 503.

As heretofore stated, it does not seem to us that the language employed by August Furche is susceptible of the construction that it referred only to a community interest in the Elm street lots. He described the property as a "certain brick store in Corsicana, Texas, and three lots each 25x200 feet on Elm street in Dallas, Texas, and known by ordinance designation as Nos. 363, 365 and 367," followed with the provision:

"Said property is devised to my beloved wife for her natural life with the remainder and fee over to my grandchildren."

Then follows later on the following language:

"Subject to the life estate therein of my said wife and certain stipulations recited later on in this will, I bequeath to each of my grandchildren, Bertha, Carrie and Arthur Furche and William A. Sailer, the children respectively of my deceased son and daughter, the said Corsicana and Dallas city property, share and share alike."

He employed the same language in disposing of the Elm street lots that he did in disposing of the Corsicana lot, his separate property. He did not say "my property" or "my interest in said property," but that "said property is devised." It cannot be disputed

that by the will the grandchildren of August Furche were deprived of property to which they would have been entitled but for the will devising same to Mrs. Bertha Furche, and, further, it cannot be gainsaid that she took under the will something that she would not have been otherwise entitled to receive, that is, would not have passed to her under the law of descent and distribution.

Assuming that, as contended for by appellee, the first item of August Furche's will should read:

"Subject to the payment of my debts, I bequeath to my beloved wife, Bertha, absolutely, all property, real, personal and mixed, which, at my death, I may own, wherever situated,"

—we are, nevertheless, of the opinion that said language would have the meaning as though the testator had said:

"(1) Subject to the payment of my debts, I bequeath to my beloved wife, Bertha, absolutely, all property, real, personal and mixed, which at my death I may own, wherever situated, except, however, I do not give her that part of the property which I own described as 'a certain brick store in Corsicana, Texas, and three lots, each 25x200 feet, on Elm street in Dallas, Texas, and known by ordinance designation as Nos. 363, 365, and 367.'"

And, to carry the meaning on, the final clause of item 1 should read:

"But that part of the property I own described as 'a certain brick store in Corsicana, Texas, and three lots, each 25x200 feet, on Elm street in Dallas, Texas, and known by ordinance designation as Nos. 363, 365, and 367, * * * (is) devised to my beloved wife for her natural life, with the remainder and fee over to my grandchildren, subject to the limitations hereinafter set forth.'"

The paraphrase we have made undoubtedly gives the real meaning of item 1 of August Furche's will. If it be admitted that he was attempting to dispose only of property which he owned, then it is equally true, etymologically, or from any other standpoint, that his language of ownership was expressly applied to include all of the three lots on Elm street. Then, if this be true, the will discloses a manifest purpose to dispose of the entire interest in the brick store in Corsicana and the three Elm street lots, and a belief on his part that he owned them and had the right to dispose of them. The language of the will is comprehensive and adequate to describe with certainty the Elm street lots as an entirety, and not merely an undivided or partial interest therein. They are so described in item 1. They are disposed of as an entirety. In item 1 a life estate is given to the wife, "with the remainder *and* fee over to my grandchildren, subject to the limitations hereinafter set forth."

In item 2, subject to the life estate therein of the wife and certain stipulations recited later on in the will, August Furche bequeathed to each of his grandchildren Bertha, Carrie, and Arthur Furche and William Sailer, the said Corsicana and Dallas city property, share and share alike. There is no indication here that the testator was dealing only with a partial interest, but the language is only appropriate to a disposition of the said Corsicana and Dallas city property as an entirety, and provides for its vesting in the grandchildren, share and share alike.

Item 3 shows that a certain brick store in Corsicana and three lots on Elm street are dealt with as an entirety, and it is provided that neither the possession nor legal title of said property is to rest in the grandchildren until the youngest attained the age of 25 years.

It would be inconsistent and irreconcilable with the provisions of item 4 for Mrs. Bertha Furche to have had anything but a life estate in any of "said property"—that is, "a certain brick store in Corsicana, Texas, and three lots, each 25x200 feet, on Elm street in Dallas, Texas"—because it is provided in that item that, if the testator's wife should die before the youngest grandchild became 25 years of age, the Schoellkopfs were "vested with the legal title and possession of said property until the said youngest grandchild shall have attained the age of twenty-five years, at which time the said property is to be delivered over to my said grandchildren, share and share alike." This could not be done if the entire interest in all the property was not being dealt with.

Item 5 is but an accumulation of evidence that the testator was dealing with the Elm street lots as an entirety, it being stated therein, "conditioned, however, that the legal title and possession of *all* of the aforesaid property shall remain in said trustees until such time as the youngest grandchild, living or dead, would have become twenty-five years of age." August Furche says *all* of the three lots. What does this mean? It cannot mean anything less than the entire interest in each of the three lots. Therefore, to satisfy this provision of the will, it must be deemed that August Furche had vested the legal title and right of possession in the property referred to in the trustees, and that he had dealt with said property as an entirety, disposing of the life estate, remainder, and fee, and controlling the right of possession. The testator might have withheld the vesting of the legal title in his devisees as to an interest until such time, but he could not have vested the possession of *all* the aforesaid property in the trustees and excluded every other person from any right of possession in any of said property except he had disposed of the entire interest in all of said property.

The use of the word "my," as employed by August Furche in his will, is of little import, as same is so qualified by other language thereof as to merely indicate a claim of right

by testator to dispose of all the property described in his will as devised by him as his own property. In re Moore's Estate, 62 Cal. App. 265, 216 P. 981, approved by Supreme Court of that state; Ditch v. Sennott, 117 Ill. 362, 7 N. E. 636; Brossenne et al. v. Schmitt et al., 91 Ky. 465, 16 S. W. 135.

[4] We will now pass to consider the question whether or not Mrs. Bertha Furche did elect to take and did take under said will. Mrs. Bertha Furche was named as independent executrix in the will of August Furche and made application to probate his will and qualified as executrix thereof. The inventory and appraisement filed by her in the estate of the said August Furche contained the following:

"Now comes the executrix of said estate and respectfully submits the following inventory and appraisement of the property and list of said estate. The following property is the separate property of the testator: Lot No. 14 in block 241, H. & T. C. R. R. addition to Corsicana, Navarro county, Texas, $6,000.

"The following is the community property of the testator and this executrix: 75' front on the north side and known as Nos. 363, 365 and 367 Elm street running through to Pacific avenue, $100,000; a lot 209x209 feet, southwest corner of Washington avenue and San Jacinto street, in Dallas, Texas, $11,000; lots 6 and 7 in block 128, H. & T. C. R. R. addition to Corsicana, Texas, $100, and lots 7, 8 and 9, block 15, Celeste, Hunt county, Texas, $150; money on hand with Schoellkopf & Co., $13,-889.30; household and kitchen furniture, family residence, $600."

From the date of the death of August Furche to the date of the death of Mrs. Bertha Furche, she received as rents from the Corsicana property $2,740, and as rents from the three Elm street lots $28,003.33, being all of the rents derived from said properties. In her will she devised the lot 200x200 feet, known as 3708 San Jacinto street, the lots in Celeste, Tex., the half acre of land in Corsicana, Tex. (being lots 6 and 7, block 128, Houston & Texas Central Railroad addition to Corsicana, Tex.), as her own property. This property was listed as community in the inventory and appraisement filed by her in the August Furche estate. She also devised as her own property a lot 75x150 feet on Chaparrel street, in Corpus Christi. The Corpus Christi lot was community property of August and Bertha Furche, it having been conveyed to Bertha Furche January 13, 1891, after the marriage of August Furche and Bertha Furche, and before the death of August Furche, by deeds which do not recite that the consideration was paid by Bertha Furche out of her separate estate, nor that the property was conveyed to her for the benefit of her separate estate. She acquired title to the community interest of August Furche in said lots under his will. All of the next preceding property was devised by

her will to appellee, William Sailer. Except for the will of August Furche, Mrs. Bertha Furche would not have been entitled to the community interest of August Furche in their community property, and all of the rents that accrued therefrom, from the time of his death up to the date of her death, and to a life estate in and to all of the Corsicana lot that was August Furche's separate property, and all of the rents during the time she survived August Furche that were dervied from said property, and to all of the $13,889.30 in cash with the Schoellkopf Company, and to all of the household and kitchen furniture valued at $600, but, to the contrary, the interest so received by her under and by virtue of the will of August Furche would have passed under the law of descent and distribution to his four grandchildren. The inventory and appraisement filed in the estate of Mrs. Bertha Furche listed the lot at the southwest corner of Washington avenue and San Jacinto streets, Dallas, lots 6 and 7 in block 28 of the Houston & Texas Central Railroad addition to Corsicana, lots 7, 8 and 9, block 15, Celeste, Hunt county, Tex., 3 lots in Corpus Christi, Tex., on Chaparrel street, all the household and kitchen furniture and jewelry, and all the cash on deposit with G. H. Schoellkopf Company as the property of Mrs. Bertha Furche. The independent executor of the estate of Mrs. Bertha Furche sold the Washington avenue and San Jacinto street property for $12,500; the Corpus Christi for $12,500, the lots in Celeste, Hunt county, Tex., for $300; the household and kitchen furniture for about $300. Mrs. Bertha Furche had on hand at the time of her death notes amounting to about $15,000, purchased for her by one Bryant T. Barry, and a note for $11,000, executed by the Schoellkopf Company. The court peremptorily instructed the jury to return for appellee, William Sailer and against appellants Arthur, Carrie, and Mrs. Carrie Furche the following verdict on which judgment was rendered:

"We, the jury, find against the plaintiffs Arthur Furche, Carrie Furche, and Mrs. Carrie Furche, and in favor of the defendant, William Sailer, in all things, save and except that we find that the plaintiffs Arthur Furche and Carrie Furche and the defendant, William A. Sailer, own, in equal, undivided third interests the following described property: Lot No. 14 in block 241 of Houston & Texas Central Railroad addition to Corsicana, in Navarro county, Tex., and, further, that they own, in undivided interests, as follows: Arthur Furche, one-sixth; Carrie Furche, one-sixth; and William Sailer, four-sixths of the property described as follows: Lots 11 and 29 and the east half of lot 12, and the east half of lot 28, all in block 75/120 of the city of Dallas, Dallas county, Tex., which altogether constitute a frontage of 75 feet on the south side of Pacific avenue and 75 feet on the north side of Elm street, running through to the south side of Pacific avenue 200 feet, which lots are designated in the will of August Furche as being Nos. 363, 365,

and 367 on Elm street in the city of Dallas, Tex."

Appellants excepted to the court's instructions on the ground, among others:

"That the court should have peremptorily instructed the jury that Mrs. Bertha Furche did elect to take under her husband's will, and that as a result thereof defendant is estopped to claim that said Elm street lots were community property."

Appellee, William Sailer, took all of the property devised to him by Mrs. Bertha Furche, and now holds the same. He has never offered to surrender to Carrie and Arthur Furche the property Carrie and Arthur Furche would have inherited from August Furche had Mrs. Bertha Furche elected not to take under his will. Appellants also excepted to said charge on the ground that the court, instead of giving said peremptory instruction for appellee, should have given appellants' requested special charge that appellants Arthur Furche and Carrie Furche were entitled to recover an undivided two-thirds interest in the said Elm street lots. Appellants' requested special charge No. 1 is as follows:

"You are instructed that, under the law and the undisputed facts, plaintiffs Arthur Furche and Carrie Furche are entitled to recover an undivided two-thirds interest in the first two tracts of land described in count 1 of plaintiffs' petition."

The first two tracts described in count 1 of appellants' petition are:

"The certain brick store in Corsicana (lot 14, block 241, of the Houston & Texas Central Railroad addition), and lots 11 and 29, and the east one-half of lots 12 and 28, in block 75/120 of the city of Dallas, being the 75x200 feet on Elm street, described in item 1 of the will of August Furche."

We are of the opinion that, under the holding in the following authorities, the above facts demonstrate beyond the peradventure of a doubt that Mrs. Bertha Furche did accept under the will of August Furche, deceased, and that appellee, William Sailer, having received and retained under the will of Mrs. Bertha Furche the property of August Furche devised by him to Mrs. Bertha Furche, was estopped to claim that said Elm street lots so devised by the will of August Furche to his four grandchildren were community property. Farmer v. Zinn, Court of Civil Appeals, supra; Farmer v. Zinn, Commission of Appeals, supra; Dunn v. Vinyard, supra; Smith v. Butler, supra; Philleo v. Holliday, supra; Mayo v. Tudor's Heirs, 74 Tex. 471, 12 S. W. 117; Lee et al. v. McFarland et al., 19 Tex. Civ. App. 292, 46 S. W. 281; Skaggs v. Deskin (Tex. Civ. App.) 66 S. W. 793; Chace v. Gregg, 88 Tex. 552, 32 S. W. 520; Caddell v. Lufkin Land & Lumber Co. (Tex. Civ. App.) 234 S. W. 138; Id. (Tex. Com. App.) 255 S. W. 397; Pryor et al. v. Pendleton et al., 92 Tex. 384, 47 S. W. 707, 49 S. W. 212;

Bumpass v. Johnson (Tex. Com. App.) 285 S. W. 272; Rogers v. Trevathan, 67 Tex. 406, 3 S. W. 569; Owens v. Andrews, 17 N. M. 597, 131 P. 1004, 49 L. R. A. (N. S.) 1072, 1108; Ross v. Presbyterian Church, 272 Mo. 96, 197 S. W. 561; Moseley v. Bogy, 272 Mo. 319, 198 S. W. 850; Allen v. Allen, 121 N. C. 328, 28 S. E. 513; McDermid v. Bourhill, 101 Or. 305, 199 P. 610, 22 A. L. R. 428; Robert H. West v. Lula E. West, 131 Miss. 880, 95 So. 739, 29 A. L. R. 226; Utermehle v. Norment, 197 U. S. 40, 25 S. Ct. 291, 49 L. Ed. 655; 1 Pomeroy's Equity (4th Ed.) § 515; 40 Cyc. 1978, 1979, 1980. We therefore hold that the court erred in instructing the jury to return verdict for appellee upon which judgment appealed from was rendered, and erred in refusing to give appellants' requested special charge No. 1. This result is reached by the simple method of following the natural course that the uncontroverted facts irresistibly established, showing the environments and the course of procedure thereunder, acts and conduct of Mrs. Bertha Furche, recognizing and giving force and effect to the provisions of the will of August Furche in the bequest made by him of property to her, which she would not have otherwise been entitled to, and the bequest made by him of property to his four grandchildren, which they otherwise would not have been entitled to, but for the provisions of said instrument. From such environments and facts, it was clearly established that Mrs. Bertha Furche had knowledge of her rights in the property bequeathed to her by August Furche and to his four grandchildren, as described in his will, and, further, that she had knowledge of the condition and extent of the property or estate that August Furche was dealing with in making the devises of property to her, the said Mrs. Bertha Furche, and the four grandchildren of August Furche, and was put on notice of the necessity to select between the inconsistent rights in reference to the property dealt with in said will, and, further, that she intended to and did elect to take under said will, as shown by her acts and conduct viewed in the light of all the surrounding facts and circumstances.

[5] The general rule is so well announced in the case of Dunn v. Vinyard (Tex. Com. App.) 251 S. W. 1043, 1046, that we feel called upon to quote therefrom as follows:

"In the absence of statutory regulation, it may be generally said that two things are necessary, in order that acts relied upon will amount to an election: First, the party must have had knowledge of his rights; that is, he must have had knowledge of the condition and extent of the estate, and of his duty to choose between the inconsistent rights; second, that he intended to elect, as shown by his words and acts, viewed in the light of all the circumstances."

We think the above requirements were met in the case before us.

[6] Did Mrs. Bertha Furche know, as a matter of law, that she could not take her community interest without renouncing the will of her husband, August Furche, and, if not, did that ignorance of the law prevent an estoppel from arising against her, the language of the will requiring her to elect whether she would take thereunder? This question was before the Supreme Court of the United States in the case of Charles H. Utermehle v. M. E. Norment, 197 U. S. 40, 25 S. Ct. 291, 49 L. Ed. 655, and, disposing of same, it was held, as shown by the syllabi:

"(1) A party taking the benefit of a provision in his favor under a will is estopped to assert the invalidity of that instrument.

"(2) Ignorance of the rule of law that a party taking the benefit of a provision in his favor under a will is estopped to assert the invalidity of that instrument, although coupled with ignorance of any evidence on which a contest could be based, will not prevent the application of such rule, in the absence of fraud, imposition, or misrepresentation, where the original situation cannot be restored, and there has been extreme negligence in attempting to discover the facts."

The evidence in this case shows the absence of fraud, imposition, or misrepresentation; therefore the election of Mrs. Bertha Furche to take under the will of August Furche could not have been induced by a condition arising from fraud, imposition, or misrepresentation.

[7] Plaintiff's seventh proposition, viz.:

"The will of August Furche having devised the three lots on Elm street 25x200 feet each, described in item 1 of said will, to testator's grandchildren, share and share alike, subject to the life estate of his wife, Mrs. Bertha Furche, and the undisputed evidence showing that Mrs. Bertha Furche elected to take and did take under said will property which she would not have been entitled to but for the terms of said will, and, further, that the plaintiffs Arthur and Carrie Furche, as grandchildren of August Furche and devisees named in his will, became the owners of an undivided two-thirds interest in said property by virtue of said will, and that they have not conveyed their interest and have not lost same by waiver, acquiescence, estoppel, laches, or limitation, the court erred in not instructing the jury to return a verdict in their favor for an undivided two-thirds interest in the said lots, and in instructing a verdict against them,"

—will have to be sustained. August Furche willed the three Elm street lots in Dallas, 25x200 feet each, to his wife, Mrs. Bertha Furche, for her natural life, with the remainder in fee over to his grandchildren. In item 2 of August Furche's will, Bertha, Carrie, and Arthur Furche and William A. Sailer were named as the grandchildren who are to take the remainder in fee. The grandchild Bertha Furche died January 26, 1918. Therefore appellants Carrie and Arthur Furche and appellee, William A. Sailer, are the other grandchildren named in said will, and, under the facts heretofore found by us, Mrs. Bertha Furche elected to take and did take under the will of August Furche property which she would not have been entitled to but for the terms of said will. G. H. Schoellkopf and Hugo W. Schoellkopf, trustees under the will of August Furche, collected in rents from the "certain brick store in Corsicana" the sum of $16,516.96 between May 16, 1912, and December 10, 1925, and rents from the three Elm street lots, 75x200 feet, $212,717.99, between March 11, 1912, and December 11, 1925. The Ervay street lot was conveyed to the trustees by Alexander and Hogsett December 30, 1912, for a consideration of $22,500, $20,500 cash, and the assumption of two vendor's lien notes for the sum of $1,000 each, dated July 6, 1906, and due 7 and 8 years after date. The Elm street lot, bought from the Busch estate, was conveyed to said trustees January 7, 1918, for a consideration of $60,000 cash, and was at the date of the trial in the court below of the value of $125,000, and that the Ervay street lot, conveyed to the trustees by Alexander & Hogsett, was of the value of $25,000, and that said properties were of the same value on December 19, 1925. August Furche had an account with the G. H. Schoellkopf Company 3 to 5 years prior to his death. After the death of Mrs. Bertha Furche, an account was opened on the books of the Schoellkopf Company in the name of Bertha, Carrie, and Arthur Furche, three of the grandchildren and two of the appellants. After the purchase of the Ervay street property from Alexander & Hogsett, and the Elm street property from the Busch estate, an account was opened on the books of the Schoellkopf Company for each property. All of the money that was derived from the Elm street and Corsicana properties, and that derived from all of the properties bought by the trustees, was deposited in one account in a common fund in the name of Hugo W. Schoellkopf, independent executor of the estate of Mrs. Bertha Furche, deceased. As to the source of the money paid for the property bought by the trustees, G. A. Nettleton, appellee's witness, who had been auditor of the Schoellkopf Company for about 10 years before the trial and before becoming auditor was a bookkeeper for said company for about 15 years, testified:

"I don't know whether I could trace the funds definitely or not and determine how much of the purchase price of this property [the Ervay street lot] came out of the rents and revenues of the Elm street and Corsicana properties described in August Furche's will. The funds were mingled to a great extent. The property was mostly paid for by the money on hand at the time of Mrs. Bertha Furche's death. I couldn't trace it exactly. 'Mostly' means more than half of it, I would think. At this time I am unable to tell just where the money came from to buy the property at Ervay and Orr, except that I believe it mostly came from the money on hand at Mrs. Bertha Furche's death."

The gross rents from the Corsicana property, from May 6, 1912, to December 31, 1912, amounted to $531.67, and on the Elm street lots, devised by the will of August Furche, from March 11, 1912, to May 16, 1912, amounted to $1,733.33, and from May 16, 1912, to January 6, 1913, amounted to $4,550, a total of $6,815. In 1912 the trustees paid to the grandchildren Bertha, Carrie, and Arthur Furche, $1,070 out of the amount of $1,876.39 allotted to them for that year, leaving a balance belonging to them in the hands of the trustees on December 31, 1912, of $806.39. For the year 1913, the sum of $1,730 was paid to them out of an allotment of $2,300.02, leaving a balance of said allotment due of $1,376.41. The two notes assumed in the purchase of the Ervay street property became due July 6, 1913, and July 6, 1914, respectively. The deed to the lot conveyed by the Busch estate to the trustees was executed January 7, 1918. For the year 1917 the trustees paid to the Furche grandchildren $1,875 out of the sum of $2,985.13 allotted to them, leaving a balance of $787.58 due. The trustees allotted to Bertha, Carrie, and Arthur Furche, after the death of Mrs. Bertha Furche and until the death of Mrs. Bertha Furche in January, 1918, three-fourths of the net returns from the "certain brick store in Corsicana" and three-eighths of the income from the three Elm street lots, 75x200 feet, described in item 1 of the will of August Furche. After the death of Mrs. Bertha Furche, the trustees allotted to appellants Carrie and Arthur Furche, jointly, one-third of the income from the three Elm street lots and two-thirds of the income from the Corsicana lot. As August Furche, by his will, bequeathed the three Elm street lots to his four grandchildren, share and share alike, there should have been credited and paid to Bertha, Carrie, and Arthur Furche, for 1912, $3,297.96, or $1,648.98 more than was allotted to them; for the year 1913, $3,994.24, or $1,997.12 more than was allotted to them; for the year 1914, $6,395.40, or $3,197.70 more than was allotted to them; for 1915, $3,505.54, or $1,752.77 more than was allotted to them; for 1916, $4,774.22, or $2,387.11 more than was allotted to them; for 1917, $5,783.38, or $2,891.69 more than was allotted to them. Therefore, at the time of the purchase of the Elm street lot from the Busch estate on January 7, 1918, the trustees had funds belonging to Carrie, Arthur, and Bertha Furche amounting to more than $14,000. The will of August Furche provides in item 7:

"After making annual provision for the education and support of my said grandchildren, the surplus income, if any, is to be invested in real property."

The only investments in real estate made by the trustees were the purchases of the Ervay street lot and the Elm street lot. The will of August Furche provides that the legal title to the "certain brick store in Corsicana" and the three lots on Elm street, Dallas, shall in no event vest in the grandchildren until the youngest shall have attained the age of 25 years; that the possession shall not be in the grandchildren, but shall be in the trustees until the youngest grandchild shall arrive at the age of 25 years. Appellee is the youngest grandchild of August Furche. He was born December 20, 1900, and became 25 years of age December 20, 1925. Appellants were not advised of the purchase by the trustees of the Ervay street and the Elm street lots. The trustees took possession of said lots so purchased by them, but did not say they were taking possession of said lots under the will of Mrs. Bertha Furche in order to deprive the Furche grandchildren of their title to it. No statements were made to appellants with respect to any property, except the "certain brick store in Corsicana" and the three Elm street lots devised by the will of August Furche. The money that the trustees considered as belonging to the Furche grandchildren was deposited to the credit of Mrs. Bertha Furche's estate. The account in the bank was in the name of Hugo Schoellkopf, independent executor of the estate of Mrs. Bertha Furche. All of the checks drawn to Carrie, Bertha, and Arthur Furche were signed "Hugo W. Schoellkopf, Independent Executor"; that is, the voucher checks were all signed that way. Before the trustees put in the voucher check system, the checks sent to Bertha, Carrie, and Arthur Furche were checks of the Schoellkopf Company. During all the correspondence with Mrs. Carrie Furche and her children Arthur, Bertha, and Carrie Furche, with respect to the estate, the trustee Hugo W. Schoellkopf signed his communications as executor of the Bertha Furche estate. All sums remitted to appellants were by checks drawn on the account of the Bertha Furche estate, accompanied by printed receipt forms worded: "Received of Hugo W. Schoellkopf, Independent Executor of the Estate of Mrs. Bertha Furche." The Furche grandchildren were all minors at the death of Mrs. Bertha Furche. The grandchild Bertha Furche was 20 years of age at the time of Mrs. Bertha Furche's death, Carrie Furche did not become of age until March 8, 1915, and Arthur Furche did not become of age until September 6, 1918. After receipt of the letter from Messrs. Spence, Knight, Baker & Harris to Mr. Gunnell, above quoted from, Mrs. Carrie Furche did not make any agreement with appellee and the trustees under the will, or with anybody else, that her children did not have any interest in the Elm street property mentioned in the will of August Furche, except such interest as they would have on the theory that Mrs. Bertha Furche had the right to dispose of one-half of it by her will. Appellant Mrs. Carrie Furche testified that she did not at any time have any intention of waiving or surrendering or giving up any of the rights

of her children in said Elm street property. On January 26, 1914, Hugo W. Schoellkopf, trustee, wrote Mrs. Carrie Furche as follows:

"I am anxious to do all I can, in accordance with provisions in Mr. Furche's will, to see that your children get as good education and training as may be possible. At the same time, I want to save as much of their income as I possibly can, for I think it is equally important for each of them to have something when they reach maturity and start out in life. I am sure you will agree with me as to this."

In reference to said letter, she testified that, before she received the above letter of January 26, she had read the will of August Furche, and was familiar with the following:

"After making annual provision for the education and support of my said grandchildren, the surplus income, if any, is to be invested in real property."

And further testified:

"I did, more than once, protest against any statement that William Sailer was entitled to more than an equal share of the Elm street and Corsicana property mentioned in the will of August Furche. No one ever sent me a copy of the inventory filed in the estate of August Furche. At the time I was having the correspondence with Mr. Schoellkopf about which I have testified, I did not know that there was other property than the Elm street and Corsicana lots given in August Furche's will and the Corpus Christi property mentioned in the letter from the lawyers; I did not know anything about any other property. After I read Mrs. Bertha Furche's will, I did not know anything about any property except that mentioned in her will. No one ever told me that any of the property mentioned in her will was community property, nor that any of it was on hand at the time of August Furche's death; neither Mr. Schoellkopf nor Mr. Sailer, nor any one else, gave me any information as to the status of the community property or estate of August and Bertha Furche except what was contained in that letter from the lawyers; I had a copy of Bertha Furche's will, also a copy of August Furche's will; I saw the letter from Spence, Knight, Baker & Harris to Volney C. Gunnell; I received the letter that Mr. Schoellkopf wrote about the Corsicana property being community property. I never did have anything else, I didn't know anything else about the property. I was never in Texas in my life until December, 1925; I never did study law; I did not know anything about the laws of the state of Texas. I never did study bookkeeping; I did not know anything about keeping books. When I saw the statement in the letter from Spence, Knight, Baker & Harris to Volney C. Gunnell that Mr. Schoellkopf had the discretion to give or withhold income from my children as he might see fit, I believed it; when he wrote me that it was in his discretion to allow us little or much, according to his judgment, I always thought Mr. Schoellkopf had the right to give us what he pleased and we could do nothing about it. I thought that from what Judge Gunnell had said, and what friends had said, and what the wills said. After I wrote the letter of January 25, 1915, in which I told Mr. Schoellkopf that I didn't think that part of the will of Mrs. Furche was right and would stand in law in which she attempted to treat that property as community property, and I got a letter from Mr. Schoellkopf in which he told me it wouldn't do any good to try to do anything about it, I thought he knew what he was talking about. As to how I got the idea that Mrs. Bertha Furche had put some improvements on that community property, I think she said in one of her letters that she would have to improve the property on Elm street. I saw the provision in Mrs. Bertha Furche's will which reads as follows: 'Subject to the foregoing provisions of this will, I bequeath to my beloved grandson, William A. Sailer, in fee, and absolutely, all property, real, personal and mixed, of which I may die seized and possessed, and wherever situated; together with my community one-half of all the rents of lots 362, 365 and 367, on Elm street, in Dallas city, Texas, until he is twenty-five years old.' I remember seeing that provision. It was from the phrasing of Mrs. Bertha Furche's will, from the letters that Mr. Schoellkopf wrote me, and the letter of the attorneys also, that I got the idea that Mrs. Bertha Furche had only disposed of the rents by her will. I also saw in her will the following provision: 'Should my said grandson, William A. Sailer, die at any time before he attains the age of twenty-five years, without leaving wife or issue, then the aforesaid property No. 3708 San Jacinto street, in Dallas, and the lots in Celeste, Texas, and Corpus Christi, Texas, and all my other property, real, personal and mixed, herein devised to him, I hereby bequeath as follows: (d) The Elm street lots in the city of Dallas, aforesaid, to go as directed in my deceased husband's will, except one-half the rents thereof, which are bequeathed to my aforesaid sisters and brother's children, until December 20, 1925.' During all of my dealings with this matter, my correspondence with Mr. Schoellkopf and looking after the interests of my children so long as they were minors, I never did at any time give up any of their rights knowingly; I never did intend to give up any of their rights; it was my intention to protect their rights the best I could all the time; I never did suspect that anybody was trying to take advantage of me; I always trusted Mr. Schoellkopf and believed what he said as to the law and the facts. When I came down here in December, 1925, my children and I expected to get two-thirds of that Elm street property; we expected it to go back to the grandfather's will, to be disposed of by his will. Never before 1925 had anybody ever contended that it would not go that way. I had never, before that time, had any information from anybody that there would be a contention that the Elm street lots would not be divided between my children and William Sailer, share and share alike. I did not, at the time I came down here in December, 1925, know anything about the lots that had been bought by the trustees; they never did tell me anything about investing money in those lots; they never had told me anything about making any investment of the income derived from the Elm street lots or the Corsicana property; they had told me about remodeling and build-

ing. Nobody ever told me that the Corpus Christi property had been sold by the trustees; I never did know anything about the Corpus Christi property except what was stated in the letter from the attorneys. I don't remember that anybody ever told me that that Corpus Christi property was community property of August Furche and Bertha Furche, or that it was conveyed to them during their married life; it was stated in the letter from the attorneys that it was her separate property."

Appellants Arthur Furche and Carrie Furche each, in effect, testified that they were never in Dallas prior to December, 1925, and had never seen Mr. Hugo Schoellkopf before that time; that before that time they did not know anything about the property that belonged to August Furche and his wife, Mrs. Bertha Furche, except the information contained in the wills of August Furche and Mrs. Bertha Furche, and in the letter from Spence, Knight, Baker & Harris; that they saw two or three letters to their mother from Mr. Hugo Schoellkopf, in which he stated that he had absolute discretion as to how much he would send and how much he would retain of the income; that they saw the letter in which Mr. Schoellkopf advised their mother as to what the law was in Texas with respect to their rights; that they never did at any time, prior to December, 1925, consult with an attorney with respect to their legal rights under said wills; that they relied on the statements of Mr. Hugo Schoellkopf as to the laws of Texas concerning the property; that they had no reason whatever to doubt any of his statements made in his letters, either as to the facts or as to the law; that they did not know how much Mr. Schoellkopf as trustee was paying William Sailer; that they saw statements from time to time in which Mr. Schoellkopf stated he was allotting to William Sailer one-fourth of the income from the Corsicana property and four-sixths of the income from the Elm street property; that they had read the will of August Furche and the will of Mrs. Bertha Furche perhaps more than once; that they never did at any time intend to waive any of their rights under the will of August Furche, but intended at all times to assert what legal rights they had under the will of August Furche; that they always thought they would get what the will said they were to receive; that they understood from the will that they were each to receive one-third of the property and William Sailer one-third; that when they came to Dallas, Tex., in 1925, they made that fact known to Mr. Schoellkopf; that no one had ever informed them before December, 1925, that they would not each receive one-third of that property when William Sailer should arrive at the age of 25 years.

In answer to the question as to what they expected when they came to Dallas in December, 1925, with respect to the distribution of the income which Mr. Schoellkopf retained, if any, they stated they thought the income would probably be invested in real property; that they were led to think that by the terms of August Furche's will; that they never did at any time make any agreement with anybody; that the will of August Furche disposed of only one-half of the Elm street property; never did discuss the matter with Hugo Schoellkopf or with appellee; that nobody ever asked them to make any such agreement; that no one ever told them before that time that, after the termination of the trust on December 20, 1925, they would only get between them one-third of the income and one-third of the Elm street lots; that, when Mr. Hugo Schoellkopf made that statement to them, they did not acquiesce in it and did not make any agreement with him in respect thereto; that in their dealings with Mr. Hugo Schoellkopf they understood that he was a trustee representing them as well as William Sailer; that he never did tell them that he was representing only William Sailer, and they would have to look out for their own interests, or tell them that he was claiming two-thirds of the property for William Sailer and for himself until that conversation had with him that day; that they had never seen him before and had never seen any letter in which anything of that kind was stated; that at this time he told them that the property was to be divided one-third to them and two-thirds to William Sailer—that is, the Elm street property mentioned in the will of August Furche; that they did not agree that that was the proper distribution of it and told him it was not; that Mr. Schoellkopf paid them some money, to Arthur $3,500, and Carrie $3,000; that he asked them to sign a release, releasing him from the trusteeship of the estate; that they signed a release; that he did not ask them to sign a release to any of their rights to the property; that he told them they were not signing a release to the property or any income of the property; that he did not ask them to sign a release for the benefit of William Sailer, but said it was not for the benefit of William Sailer; that it was merely to release him of the trusteeship, and that they believed that; that he did not tell them that he was paying them more money than they were entitled to, or that they were not entitled to the amount that he was paying them; that he did not pay them anything for signing the release, except the amount which he said was owing to them; that they relied on Mr. Hugo Schoellkopf's word as to what he stated to them; that their purpose in signing the release was to release Mr. Schoellkopf from the trusteeship, and that they are not claiming anything against him now; that Mr. Schoellkopf did not tell them he was getting the release from them to turn over to William Sailer for him to

plead in a lawsuit as a defense against them; that they did not understand he was getting it for that purpose and did not know he was going to turn it over to William Sailer; that they thought Mr. Schoellkopf was trying to act in their interest as well as William Sailer's interest as beneficiaries of the will; that they first learned of the investments by the trustees in the Elm street lot and in the Ervay street lot from Hugo Schoellkopf when they came to Dallas in December, 1925; that Mr. Schoellkopf did not tell them where he got the money to buy the lots, and that they learned for the first time, in July, 1926, that the Corpus Christi property was not conveyed to Mrs. Bertha Furche as separate property, and that the trustees had sold the Corpus Christi property for $12,500, and that at the time of August Furche's death he had between $12,000 and $14,000 in cash; that before that time they did not know anything about the estate of August Furche, as to what he had or whether it was community or separate property, except what was contained in the wills of August and Mrs. Bertha Furche, and in the letter from Spence, Knight, Baker & Harris, and that they found out in July, 1926, that Mrs. Bertha Furche took possession of the community property of herself and August Furche after his death; that they received the information as to the extent of the community estate of August Furche and what was done with it for the first time in July, 1926; and that through the firm of Spence, Smithdeal, Shook & Spence.

Hugo W. Schoellkopf, a witness for appellee, testified as follows:

"When I proceeded to act as independent executor under the will of Mrs. Bertha Furche, and when my father and I proceeded to act as trustees under the will of August Furche. and Mrs. Bertha Furche, it was my purpose to act with entire fairness to all parties interested in both estates. That was my purpose throughout the entire period of the trust. I was acting in all cases in the belief that I was doing exactly what it was my duty to do under both wills. I received the letter from Volney C. Gunnell, of Ogden, Utah, dated September 11, 1912, which has been introduced in evidence. When I received it, I took it over to Judge Spence and asked him to reply to it. He prepared this reply that has been read. I believed that his opinion and judgment concerning the matter were correct. I did not receive from Mrs. Furche or Mr. Gunnell any letter with reference to that opinion, criticizing it and saying they were not going to abide by it. After that correspondence, I treated the income from the Elm street property in accordance with that opinion, one-half as governed by the will of Mrs. Bertha Furche and one-half as governed by the will of August Furche. Thereafter I did make disposition of that income among the plaintiffs and William Sailer—make allotments of that income on that basis; and that was true throughout the period of trust. I certainly did not have any intention of depriving the Furche children of any of their rights. I tried to act fairly as between all the beneficiaries of the trust estate. * * * I have already testified that I want to be fair in this matter, and that I was not trying to take any advantage of Carrie and Arthur Furche. No; it did not enter my mind to hold this property, or any of it, so as to bar Carrie and Arthur Furche from any of their rights. I was trying to do the best I could and I just presumed—I never did have any intention or thought of repudiating this trust. On the other hand, my intention was to try to execute the trust faithfully. I do not want to be understood by this jury as trying to estop or bar the Furche children from any of their rights by any act of mine; I just want what is fair and right for everybody; I want them to get what they are entitled to under the wills of August Furche and Bertha Furche; that is my desire. * * * According to my interpretation of the will, these Furche children were entitled to every cent I paid them in December, 1925. I wouldn't have paid them if I hadn't thought so. I didn't pay them a penny during all the period of this trust that they were not entitled to, according to my interpretation of this will. When Mrs. Furche, back there in 1915, questioned my interpretation of the will, I didn't go into court and ask for an interpretation of it; I simply explained the matter, I considered it hadn't gone far enough, don't you see; there wasn't any break. Answering the question, 'But it was so strong that you wrote her and assured her that it wouldn't be any use for her—it wouldn't do any good for her to take it into the courts?' I answer that I told her that was my opinion. I think I made the statement that I had consulted the best lawyers in Dallas and could assure her it would do no good. I testified this morning, in answer to Mr. Locke's question, that I had held this Elm street property that was bought from the Busch estate and the Ervay street property, bought from Alexander and Hogsett, in my possession continuously as the property of Bertha Furche estate. Certainly I wasn't holding those properties that way in order to defeat any claim these Furche children might have against it. So far as I know, the Furche children didn't even know we had this property. I never did tell them about it; they never asked me, and I never did give them any information about this estate, except what they asked for. In getting that release from Arthur and Carrie Furche, I did not have any thought in my mind of shutting them off from asserting any of their rights to the estate of August Furche; that thought didn't enter my mind. * * * I did not intend to tie them up so they could not assert their rights against this estate or against William Sailer; that thought didn't enter my mind."

We think that but one conclusion can be reached from the evidence pertinent to and bearing upon the issues of waiver, acquiescence, estoppel, laches, and limitation, presented by appellee's pleadings as a defense to appellants' right to recover, viz. that neither one of such defenses was shown to exist. Leach v. Wilson County, 68 Tex. 353, 4 S. W. 613; Home Investment Co. v. Strange, 109 Tex. 342, 195 S. W. 851, 204 S. W. 314,

207 S. W. 307; Lovenberg v. Mellen (Tex. Civ. App.) 144 S. W. 317; Phillips v. Palmer, 56 Tex. Civ. App. 91, 120 S. W. 911; Perkins v. Perkins (Tex. Civ. App.) 166 S. W. 915; 2 Pomeroy, Equity Jurisprudence (4th Ed.), § 817, p. 1677; sections 802, 803, 804 805, Pomeroy, Equity Jurisprudence; also sections 818, 820, Pomeroy, Equity Jurisprudence; Collins v. McCarty, 68 Tex. 150, 3 S. W. 730, 2 Am. St. Rep. 475; Hand v. Errington (Tex. Civ. App.) 233 S. W. 567, Id. (Tex. Com App.) 242 S. W. 722.

Under no theory of the case was appellant Mrs. Carrie Furche entitled to recover any interest in the property purchased by the trustees with rents arising from the four lots bequeathed by August Furche to his four grandchildren. Under his will, neither possession nor title to said four lots could vest in said grandchildren until the youngest should attain the age of 25 years. It was provided in said will that, in the event of the death of Mrs. Bertha Furche, the taker of the life estate in said four lots, before the youngest grandchild should become 25 years of age, "the legal title and possession of said property until the said youngest grandchild should have attained the age of twenty-five years" should vest in the said Schoellkopfs as trustees, and by its terms left it exclusively to said trustees to determine what amount of the income arising from said property should be expended for the support and education of testator's four grandchildren, and, further, that the income of said four lots, if any remaining after making annual provision for the support and education of said grandchildren, should be by said trustees invested in real property for the use and benefit of said grandchildren, to pass to them under the terms of said will as the corpus of said four lots were to pass. The grandchild Bertha died while the title to and possession of said four lots was vested in said trustees and before the happening of the conditions precedent upon which depended the vesting of any interest in said grandchild Bertha under the will of August Furche. Therefore her expectant interest in said four lots, as well as such interest in the income therefrom, under item 4 of August Furche's will, supra, passed to the three surviving grandchildren, Arthur and Carrie Furche and appellee, to be delivered over to them in equal parts at such time as the youngest grandchild should attain the age of 25 years, viz. December 20, 1925. Therefore, as the surplus income of said four lots, invested by the trustees in the Elm street and Ervay street lots, was funds belonging to the estate of said August Furche, although derived from property bequeathed with limitations as above stated to said four grandchildren, the lots so purchased by said trustees became the property of said estate and passed under the terms of said will to the three surviving grandchildren, appellants Arthur and Carrie Furche and appellee, as it is clear from said will that August Furche intended for his four grandchildren to receive the full benefits of all rents arising from said four lots after the death of Mrs. Bertha Furche, and the expectant interest of the deceased grandchild in said rents to pass to the survivors as directed in said item 4.

[8] Notwithstanding the disposition that will be made of this appeal, we think it advisable, in view of further proceedings that may be had, to determine the propositions relating to the admission of certain testimony, viz.:

Mrs. Christian Bohny, a witness for appellee and a sister to Mrs. Bertha Furche, testified:

That August Furche talked to her about the law of community property 10 or 11 years before his death; that she asked him the meaning of "community property," and he said:

"Property that a married man leaves at the time of his death belongs to his wife—half of it—and the husband has no right whatever to touch it; that, if a man leaves his whole property to somebody else, the wife has a right to sue and the court will give it to her."

That she had a conversation with August Furche a few days before his death; that he had been very sick the night before; that he got better in the morning, and she talked with him, and he said:

"I know that my days are numbered; I haven't very many days to live, and I made my will, and I made everything so that my wife has no trouble when I am gone; she is amply provided for, and I left half of my property to be equally divided among my grandchildren and the other part is entirely hers to do with what she pleases."

The introduction of this testimony was objected to by appellants, on the ground that it was wholly irrelevant and immaterial to any issue in the case; that any statement of August Furche would be hearsay and not admissible for the purpose of contradicting, enlarging, explaining, or varying the terms of the written will of August Furche. Said objections were overruled and testimony admitted for the purpose of showing the background of the execution of the will of August Furche. Exception was duly reserved.

Mrs. Matilda Faust, a sister of Mrs. Bertha Furche, and a witness for appellee, testified as follows:

Questioned by appellee's counsel: "Did he (August Furche) tell you of leaving his wife and of his condition after leaving his wife and where he stayed?"

Witness answered: "That he left her the same night—well, when that happened, and went to his friend's house and had a long spell of sickness. He told us that. Mr. Bader, his friend, told mother and myself. Said he was

sick for several weeks, and after he got well and straightened out his affairs, he told his wife to get a divorce from him and he would not contest it, no matter on what ground she claimed it, and after he had his affairs straightened out he went to Germany to see his mother, and on his way back from Germany we met him on the boat. We came over and he was coming back. That was 13 months, that is, 4 months after he left her he left Quincy. He was in Quincy 4 months after he left her. That is what he told us, and that during that time he stayed at Mr. Bader's house, and Mr. Bader told us that since."

Questioned by appellee's counsel: "Now, Mrs. Faust, did he tell you anything about his efforts to get his wife to let him have their son, or anything about what he was doing for his son?"

To which said witness answered: "Well, Mr. Bader wrote him a letter, and told him he met the boy and he was poorly cared for, and he inquired around and found out he was actually in need and so he—my sister—I was there at the time, and she begged her husband to take the boy and he wrote Mr. Bader that, if his wife was willing, he would raise the boy, and then the boy's mother wrote him, but Mr. Bader told me he had seen the woman herself, and she said she would let him have the child for .$5,000, and he said, 'Oh, my God! I wouldn't buy my own child; if he is worth that much to her, let her keep him.'"

In reply to question propounded by appellee's counsel, whether August Furche received any letters at any time from one Lorena, in Quincy, and whether August Furche talked to the witness about that, said witness testified:

"I just happened to be in Corsicana at the time, and he received a letter from a little girl, Lorena Furche, and she called him 'Dear Papa' and asked him to do something for her; he was doing so much for her brother, and she was his child, too; and he got angry about it and said that the child was born 13 months after he left his wife."

The above testimony was objected to by appellants, on the grounds that same was immaterial, irrelevant, and hearsay, which were overruled and said testimony admitted, to which appellants duly excepted. The admission of this testimony was clearly error, most of it being hearsay and immaterial, and that not hearsay was inadmissible in support of any issues presented by the pleadings, especially in view of the fact that appellee did not allege that August Furche's will was ambiguous, and the testimony not hearsay, but relating to the statements of said testator in reference to the disposition made by him of his estate by his will, was clearly inadmissible for the purpose of contradicting, enlarging, explaining, or varying the terms of his will, as the will itself contains no ambiguity. Hunt v. White, 24 Tex. 643; Peet et al. v. Commerce St. Ry., 70 Tex. 522, 8

S. W. 203; Morton v. Calvin (Tex. Civ. App.) 164 S. W. 422; Smith v. Garrett, 29 Tex. 49.

The trial court did not err in holding that the three Elm street lots, referred to in the will of August Furche, were community property of said testator and Mrs. Bertha Furche, and that appellant Mrs. Carrie Furche was not entitled to recover and to this extent the judgment is affirmed.

We are of the opinion that, in so far as the trial court adjudged the will of August Furche did not require Mrs. Bertha Furche to elect whether she would take under the will of August Furche or claim her rights of property under the law, and that she did not so elect, and that appellee was not estopped to deny that he had elected to take under the will of said August Furche, this was error, as the court should have held that she was required by the terms of said will to elect and did elect to take under said will, and that appellee was estopped to deny that he had elected to take thereunder; therefore the judgment of the trial court is reversed and rendered on said issues in favor of appellants Arthur and Carrie Furche, and that said cause should be and is reversed and remanded for further proceedings to determine the respective interests of appellants Arthur and Carrie Furche and appellee in the property purchased by the trustees under the wills of August Furche and Mrs. Bertha Furche with funds belonging to the appellants Arthur and Carrie Furche and appellee, and for the partition between said appellants and appellee of the properties involved, and in which they have an interest, and it is so ordered.

Affirmed in part, reversed and rendered in part, and reversed and remanded in part.